STATE OF NORTH CAROLINA v. LAMONT TINDALL

No. 32

(Filed 17 April 1978)

1. Constitutional Law § 50— speedy trial—factors to be considered

Factors to be considered in determining whether a defendant has been denied his right to a speedy trial include (1) the length of the delay, (2) the reason for the delay, (3) the extent to which defendant has asserted his right and (4) the extent to which defendant has been prejudiced.

---

State v. Tindall

2. **Constitutional Law § 51— four years between offense and trial—speedy trial not denied**

Defendant was not denied his right to a speedy trial where four years elapsed between the time of the alleged offense and defendant's trial, since (1) much of the delay was caused by defendant who fled the State of N. C. and lived under an assumed name in N. Y. and Pennsylvania until apprehended for violation of federal narcotics laws; (2) defendant made no demand for a final disposition of the murder charges against him until four months before trial; and (3) the evidence suggests that defendant suffered no significant prejudice as a result of the delay.

3. **Constitutional Law § 68; Witnesses § 10— nonresident witnesses—method for compelling attendance improper**

The General Assembly, in enacting G.S. 15A-803, did not seek to confer upon judges of this State the unconstitutional authority to issue material witness orders to compel the attendance of N. Y. residents who have no contact with this jurisdiction; therefore, the trial judge acted properly in denying defendant's motion for G.S. 15A-803 material witness orders, and this denial did not infringe upon defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his favor. Moreover, defendant could have sought to obtain the testimony of the nonresident witness under G.S. 15A-811 to -816, the Uniform Act to Secure Attendance of Witnesses from without a State in Criminal Proceedings.

4. **Criminal Law § 91.8— motion for continuance—time for making**

Defendant's motion for continuance made after the case was called for trial and a jury had been selected and empaneled was not made in apt time and was therefore deemed waived. G.S. 15A-952(b),(c), and (e).

DEFENDANT appeals from judgment of *Webb, J.*, 25 July 1977 Session, NEW HANOVER Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of Donnie Dent on 11 July 1973 in the City of Wilmington, New Hanover County, North Carolina.

The State's evidence is narrated in the following numbered paragraphs.

1. On 11 July 1973 around 4 p.m. Sergeant T. E. McLaurin of the Wilmington Police Department saw defendant, whom he had known for six or seven years, near 8th and Dawson Streets.

2. James Butler and Donnie Dent were both selling drugs for defendant Lamont Tindall, and both owed defendant money. On 11 July 1973 Butler and Dent were standing in front of a home on

8th Street in Wilmington when defendant walked across the street with a gun in his hand, fired one shot which felled Dent and, when Butler ran, began chasing him. At the time of trial in this case Butler was in prison on charges of possession and sale of heroin but was brought into court and testified as a witness for the State.

3. On 11 July 1973 Cleveland Brown spoke to James Butler and Donnie Dent in the vicinity of 8th and Dawson Streets, passed defendant while walking toward the Dew Drop Inn and immediately thereafter heard a shot. Brown turned and saw Donnie Dent lying on the ground, but neither Butler nor defendant was anywhere in sight.

4. On the Saturday immediately prior to 11 July 1973 defendant told Annette Green that "there was some niggers he was going to kill" and that Donnie Dent and James Butler were among them because they owed him money. Defendant then showed Annette Green a list of names which included the names of Dent and Butler. Annette Green thereupon warned both Butler and Donnie Dent's brother of defendant's intentions. On 11 July 1973 she was sitting on a porch on 8th Street plaiting some people's hair when defendant approached and said, "Give me a gun, give me a gun—anybody got a gun." A man named Norman Green opened his car trunk and gave defendant a gun. Defendant took a few steps into 8th Street, fired the pistol at Donnie Dent and James Butler, hitting Dent, and then chased Butler down an alley.

5. Diane Brunson was with Annette Green on the Saturday prior to 11 July 1973 when defendant, whom she was dating at the time, stated that he was going to kill Donnie Dent and James Butler because they owed him money and further stated that if he did not kill them his contact in New York would do so.

6. Francis Dent Boyd saw defendant in Wilmington on 11 July 1973 when he came to her mother's house asking for her brother Donnie Dent who was not home at that time.

7. The State and defendant stipulated that Donnie Dent died on 11 July 1973 as the result of a single gunshot wound in the right chest.

Defendant testified as a witness in his own behalf. His testimony tends to show that he was born and reared in Wilmington, North Carolina, but had moved to New York and was living there in the summer of 1973. He was self-employed selling clothes and did not return to North Carolina at any time during that summer and did not kill Donnie Dent. In 1974 he moved to Philadelphia where he worked as a shipping clerk for two years. In September 1975 he was convicted of distributing cocaine and heroin and was serving a sentence at the federal prison in Lewisburg, Pennsylvania, at the time of this trial. Defendant further testified that he saw Sergeant W. C. Brown of the Wilmington Police Department in 1975 while he was in federal custody, at which time Sergeant Brown identified him as Lamont Tindall although he had been using the name Lamont Boney since 1971. He denied seeing Vivian Davis, Catherine Beatty, Patricia Graham or Joseph Dent on 11 July 1973 in Wilmington.

Norman Green, a defense witness, testified he did not see defendant on 11 July 1973, did not own a car on that date, and did not give defendant a pistol. He did hear a gunshot on 11 July 1973 and saw a man about six feet tall leaving the scene. This witness was serving time for manslaughter at the time of this trial.

Sidney Morgan of the Wilmington Police Department, a defense witness, testified he was on duty on 11 July 1973 and took a statement from Norman Green in which Green stated that he saw a black male about six feet tall shoot Donnie Dent and run south on 8th Street, after which Green and a friend took Dent to the hospital.

Defendant then called Moses Isler, Billy Smith and George Formey, all residents of New York City, but they were not in court. The following statement of Moses Isler, sworn to before a notary public on 8 July 1977, was read to the jury:

"My name is Moses Isler. I'm 58 years old. I work as a manager of the Hot Shot Bar. I have been working there going on thirty-one years. I have lived in New York for the past thirty years. I was born in Wilson, North Carolina. I know Lamont Tindall. In the summer of 1973 I was in New York and I knew Lamont Tindall then. In the summer of 1973 he stayed at my house during that time. That is the same address as I now have. I did not know of him going down to

North Carolina at any time during the summer of 1973, because I used to see him every night. My son's birthday is on the 4th of July and on the 4th of July of 1973 I know Lamont Tindall was here in New York because he was in a room in my house and I know he didn't go down South nowhere."

In rebuttal, the State offered Vivian Davis, Catherine Beatty, Patricia Graham and Amos Bruce, all of whom testified that they saw Lamont Tindall in Wilmington on 11 July 1973. Amos Bruce further testified that he saw defendant with a pistol in his hand, heard a shot fired and saw Donnie Dent fall.

Officer McLaurin was recalled and testified, among other things, that after Donnie Dent was killed he attempted, without success, to locate Lamont Tindall and serve a murder warrant upon him.

The jury convicted defendant of murder in the first degree, and he was sentenced to life imprisonment. Defendant appealed to the Supreme Court assigning errors noted in the opinion.

*Rufus L. Edmisten, Attorney General, by Jane Rankin Thompson, Associate Attorney, for the State.*

*E. Hilton Newman, Attorney for defendant appellant.*

HUSKINS, Justice.

On 24 June 1977 defendant moved to dismiss the murder charge against him on the ground that he had been denied a speedy trial in violation of his Sixth Amendment constitutional rights. Following a hearing before Rouse, J., at which defendant and the State offered evidence, the motion was denied. This constitutes defendant's first assignment of error.

[1] Every person formally accused of crime is guaranteed a speedy and impartial trial by Article I, section 18 of the Constitution of this State and the Sixth and Fourteenth Amendments of the Federal Constitution. *Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967); *State v. Patton*, 260 N.C. 359, 132 S.E. 2d 891 (1963). Prisoners confined for unrelated crimes are entitled to the benefits of this constitutional guaranty. *Smith v. Hooey*, 393 U.S. 374, 21 L.Ed. 2d 607, 89 S.Ct. 575 (1969); *State v.*

*Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965). *See also Moore v. Arizona,* 414 U.S. 25, 38 L.Ed. 2d 183, 94 S.Ct. 188 (1973). No simple test has been developed for determining whether a criminal defendant has been denied a speedy trial. Accordingly, unless some fixed time limit is prescribed by statute (*see, e.g.,* G.S. 15-10.2; G.S. 15A-761, Art. III(a) and V(c)), speedy trial questions must be resolved on a case-by-case basis. While all relevant circumstances must be considered, four interrelated factors are of primary significance: (1) the length of delay, (2) the reason for the delay, (3) the extent to which defendant has asserted his right and (4) the extent to which defendant has been prejudiced. *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972); *State v. Wright,* 290 N.C. 45, 224 S.E. 2d 624 (1976); *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969).

[2] In the present case the following chronology is relevant to the question of speedy trial.

1. Around 4 p.m. on 11 July 1973 Donnie Dent was shot and killed on 8th Street near Dawson in the City of Wilmington, North Carolina. Numerous eyewitnesses testified that defendant was the murderer.

2. On 12 July 1973 a warrant was obtained by Officer McLaurin charging defendant with the first degree murder of Donnie Dent. The murder warrant was not served upon defendant because he had fled the State and could not be found.

3. In October 1975 Detective W. C. Brown of the Wilmington Police Department, having received information from the FBI that defendant was in federal custody on drug charges, went to Philadelphia and identified defendant who was using the alias "Lamont Boney" at that time. Officer Brown informed defendant of the murder charge, and a detainer was duly filed against him.

4. On 12 July 1976 Vernell DeVane, an employee in the Office of Clerk Superior Court, New Hanover County, signed a receipt for an article of certified mail (certified No. 593029) but never opened the package and had no knowledge of its contents. She delivered it to Mrs. Romblad, the mail clerk. The record does not disclose what Mrs. Romblad did with it. At the hearing on defendant's motion to dismiss, defendant produced a document (Defendant's Exhibit 1) entitled "Motion to Quash and Dismiss Detainer

Warrant No. 26104" and testified that three copies thereof were sent by certified mail to the Office of Clerk Superior Court, New Hanover County, Wilmington, North Carolina. He further stated: "I did not send any notation with the three copies specifying who the three copies were to go to." These documents have never been located, and there is nothing of record to show that a copy ever came to the attention of the District Attorney's Office or the Police Department of the City of Wilmington.

5. On 31 March 1977, pursuant to the Interstate Agreement on Detainers, as the same appears in G.S. 15A-761, defendant requested a final disposition of the murder charge by causing to be delivered to the prosecuting officer of the Fifth Solicitorial District and to the New Hanover Superior Court a written notice of his place of imprisonment and a request for a final disposition of the murder charge pending against him, accompanied by a certificate of the federal warden who had defendant in custody. The notice, request and certificate fully complied with the requirements of G.S. 15-761, Art. III.

6. On 23 May 1977 a true bill of indictment charging defendant with the first degree murder of Donnie Dent was returned by the Grand Jury of New Hanover County.

7. On 24 June 1977, pursuant to G.S. 15A-954(a)(3), defendant filed written motion to dismiss the charges against him on the ground that he had been denied a speedy trial. This motion was heard and denied on 27 June 1977.

8. The case was initially calendared for trial on 12 July 1977 but continued on defendant's motion until 25 July 1977, without objection by the State, to enable defendant to secure the attendance of out-of-state witnesses.

Under these facts we hold defendant has not been deprived of his right to a speedy trial. Our holding is grounded on the following considerations:

First, much of the delay was caused by defendant, who fled the State of North Carolina and lived under an assumed name in New York and Pennsylvania until apprehended for violation of federal narcotics laws. A criminal defendant who has caused or acquiesced in a delay will not be permitted to use it as a vehicle

in which to escape justice. *Barker v. Wingo, supra,* at 529, 33 L.Ed. 2d at 116, 92 S.Ct. at 2191; *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969). Even the delay which occurred after defendant was taken into federal custody is, in slight part, chargeable to him, for it was his action in fleeing to New York and Pennsylvania and committing violations of federal law which complicated and obstructed the process of bringing him to trial in North Carolina. While the State must share responsibility for this delay, there is absolutely no evidence suggesting that the State acted purposefully or wilfully. *Compare State v. McKoy,* 294 N.C. 134, 240 S.E. 2d 383 (1978).

Second, defendant made no demand for a final disposition of the murder charge against him until 31 March 1977. The "Motion to Quash and Dismiss Detainer Warrant" which defendant apparently sent to the New Hanover County Clerk of Court in July 1976, made no request for a prompt trial on the murder charge. Further, this motion was not addressed or directed to the district attorney, and there is no evidence suggesting it ever came to his attention or to the attention of his staff. When, in March of 1977, defendant did request a final disposition of the charges against him, the district attorney moved promptly to secure an indictment and defendant was brought to trial within four months. The minimal delay which occurred after defendant's request is entirely lawful for "[t]he constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case." *State v. Johnson,* 275 N.C. 264, 273, 167 S.E. 2d 274, 280 (1969).

In *State v. McKoy,* 294 N.C. 134, 240 S.E. 2d 383 (1978), defendant McKoy's murder conviction was vacated and the charge dismissed for lack of a speedy trial when during a ten-month period defendant made eight or nine requests for a trial of the charges against him and these requests were ignored. The present case stands in strong contrast to *McKoy.* While the United States Supreme Court has not held that a defendant's failure to demand a speedy trial results in a waiver of his Sixth Amendment rights, that Court has stressed defendant's responsibility to assert his right to a prompt trial. "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo, supra,* at 532, 33 L.Ed. 2d at 117-18, 92 S.Ct. at 2193.

Third, the evidence suggests that defendant suffered no significant prejudice as a result of the delay. He did testify that one prospective alibi witness "died in the last of 1974 or 1975," but, as previously noted, defendant is solely responsible for the delay which occurred prior to October 1975, and at that time his witness was already dead. Until that date defendant was *avoiding* trial. His whereabouts were unknown to North Carolina authorities, he having fled this jurisdiction and assumed a new name.

We are not unmindful of the possibility that defendant may have suffered other kinds of prejudice as a result of the delay. *See Moore v. Arizona*, 414 U.S. 25, 38 L.Ed. 2d 183, 94 S.Ct. 188 (1973); *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976). However, his failure to insist upon a prompt trial of the murder charge against him is strong circumstantial evidence that no great prejudice resulted.

"Whether and how a defendant asserts his right [to a speedy trial] is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker v. Wingo, supra,* at 531-32, 33 L.Ed. 2d at 117, 92 S.Ct. at 2192-93.

None of the foregoing considerations is conclusive. Speedy trial claims must be decided on a case-by-case basis and all relevant factors taken into account. After considering all facts of the present case, we hold defendant has not been deprived of his constitutional right to a speedy trial. *Compare, e.g., Dickey v. Florida,* 398 U.S. 30, 26 L.Ed. 2d 26, 90 S.Ct. 1564 (1970); *State v. McKoy,* 294 N.C. 134, 240 S.E. 2d 383 (1978); *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969). Accordingly, his first assignment of error is overruled.

[3] On 13 July 1977 defendant filed three verified motions for material witness orders authorized by G.S. 15A-803 in order to secure the attendance at trial of three New York City residents.

Two of these motions alleged that the persons named therein could testify "that the Defendant was in the State of New York during the month of July, 1973." The third motion made an identical allegation and further alleged that Moses Isler, the person named therein, could testify "that the defendant did not travel to the State of North Carolina during that month." Each of these motions was signed and sworn to by defendant. Each motion asked that the court treat the allegations set forth therein as an affidavit, and requested that the prospective witness named therein be taken into custody and held or released on bail.

By order entered on 18 July 1977, Judge Rouse denied defendant's motions for the material witness orders. Although defense counsel had caused subpoenas to be issued for each of the three witnesses (New York City Police were able to effect service only of the subpoena for Moses Isler), none of the three appeared at defendant's trial. However, defendant was permitted to read to the jury the affidavit of Moses Isler which appears in the preliminary statement of facts. Defendant contends the court should have compelled the attendance of his three prospective witnesses by granting his motions for G.S. 15A-803 material witness orders. Denial of these motions constitutes his second assignment of error.

G.S. 15A-803(a) provides that a judge "may" issue a material witness order when there are reasonable grounds to believe (1) that the prospective witness possesses information "material to the determination of the proceeding" and (2) that the prospective witness "may not be amenable or responsive to a subpoena at a time when his attendance will be sought." The use of the term "may" suggests that the granting or denial of a motion for a material witness order is a matter committed largely to the discretion of the judge. *See generally* 82 C.J.S. Statutes § 380a. (1953). *See also Preston v. Blackledge,* 332 F. Supp. 681 (E.D.N.C. 1971). Such discretion must, however, be exercised in a manner not inconsistent with the Sixth Amendment's guaranty that a criminal defendant be afforded "compulsory process for obtaining witnesses in his favor." This guaranty applies to criminal proceedings in this State by reason of the Due Process Clause of the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 18 L.Ed. 2d 1019, 87 S.Ct. 1920 (1967); *State v. Wells,* 290 N.C. 485, 226 S.E. 2d 325 (1976).

Consideration of G.S. 15A-803 leads us to conclude that Judge Rouse correctly denied defendant's motion and that such denial deprived defendant of no constitutional right. There are well recognized limitations on the authority of a state court to compel the attendance of witnesses who are not residents of the state, not present therein and who lack any contact therewith. Such limitations have been recognized by this Court, *State v. Means,* 175 N.C. 820, 95 S.E. 912 (1918), *Stern & Co. v. Herren,* 101 N.C. 516, 8 S.E. 221 (1888), and by the Supreme Court of the United States. *Minder v. Georgia,* 183 U.S. 559, 46 L.Ed. 328, 22 S.Ct. 224 (1902). The courts of other states have likewise noted that they lack such power and have suggested that any attempted exercise thereof would be precluded by the Federal Constitution. *E.g., State v. Blount,* 200 Or. 35, 264 P. 2d 419, 44 A.L.R. 2d 711 (1953); *State v. Breidenbach,* 246 Wis. 513, 17 N.W. 2d 554 (1945). That such limitations are of constitutional stature may be inferred from the Supreme Court's opinions in *Minder v. Georgia, supra,* and *Galpin v. Page,* 85 U.S. (18 Wall.) 350, 21 L.Ed. 959 (1874).

In light of these well recognized limitations, we think the General Assembly, in enacting G.S. 15A-803, did not seek to confer upon judges of this State the novel and seemingly unconstitutional authority to issue material witness orders to compel the attendance of New York residents who have no contact with this jurisdiction. Accordingly, Judge Rouse acted properly in denying defendant's motions for G.S. 15A-803 material witness orders. Furthermore, this denial did not infringe upon defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his favor. A state court need not engage in the futile issuance of ineffectual process in order to satisfy the requirements of the Fourteenth Amendment. *Minder v. Georgia, supra; People v. Cavanaugh,* 69 Cal. 2d 262, 444 P. 2d 110, 70 Cal. Rptr. 438 (1968); *State v. Smith,* 87 N.J. Super. 98, 208 A. 2d 171 (1965). *Cf. United States v. Wolfson,* 322 F. Supp. 798, 819 (D.Del. 1971), and cases there cited.

Our Legislature has provided a means whereby nonresident witnesses may be compelled to attend and testify at criminal proceedings in this State. The Uniform Act to Secure Attendance of Witnesses from without a State in Criminal Proceedings, G.S. 15A-811 to -816, has been enacted in fifty-three jurisdictions. 11 Uniform Laws Annotated 7 (1978 Supp.). This Act provides that,

upon presentation of a certificate executed by a court in which the nonresident witness's testimony is desired, an order may be issued *by a court of the jurisdiction in which the witness is found,* requiring the witness to attend a criminal proceeding in the former state and give testimony. The Act is constitutional, *New York v. O'Neill,* 359 U.S. 1, 3 L.Ed. 2d 585, 79 S.Ct. 564 (1959), and its provisions are available to the defense as well as the prosecution. *See State v. Tolley,* 290 N.C. 349, 226 S.E. 2d 353 (1976). Had defendant attempted to invoke the procedures of the Uniform Act, quite different questions would be presented to this Court—we would then have to determine whether defendant had made an adequate showing that the testimony of the prospective witnesses was material (*see State v. Tolley, supra; Glynn v. Donnelly,* 360 F. Supp. 214 (D.Mass. 1973)) and had adequately designated the location at which they could be found (*see Lancaster v. Green,* 175 Ohio St. 203, 192 N.E. 2d 776 (1963)). Significant Sixth Amendment questions might also be raised. *See Preston v. Blackledge,* 332 F. Supp. 681 (E.D.N.C. 1971). *Compare People v. Cavanaugh,* 69 Cal. 2d 262, 444 P. 2d 110, 70 Cal. Rptr. 438 (1968). However, since defendant requested a material witness order under G.S. 15A-803, and since Judge Rouse properly denied this request, no such questions need be decided. The court was under no duty to search our statutes and suggest to defense counsel that G.S. 15A-813 might provide a procedure for obtaining the result which he sought, but could not obtain, under G.S. 15A-803. "[An accused] may not place the burden on the officers of the law and the court to see that he procures the attendance of witnesses and makes preparation for his defense." *State v. Graves,* 251 N.C. 550, 558, 112 S.E. 2d 85, 92 (1960). *Accord, State v. Wells,* 290 N.C. 485, 226 S.E. 2d 325 (1976).

For the reasons given, we hold that Judge Rouse's denial of defendant's motions for material witness orders was correct. Defendant's second assignment of error is overruled.

[4] On 26 July 1977, after defendant's case was called for trial and a jury had been selected and empaneled, defendant made an oral motion for a continuance. This motion was based on defendant's fear that his alibi witnesses from New York might not be able to attend and testify at his trial. He stated, however, that he did expect these witnesses to attend. Court was recessed at 4 p.m. in order to give the witnesses time to arrive. When the

State v. Tindall

witnesses did not appear in court the following day, defendant's motion for a continuance, which the court had taken under advisement, was denied. Denial of this motion constitutes defendant's third assignment of error.

G.S. 15A-952(b) and (c) provide that motions for continuance must be made at or before the time of the defendant's arraignment unless arraignment is to be held at the session of court for which the trial is calendared, in which event the motion must be filed by 5 p.m. on the Wednesday prior to the session of court when trial is to begin. The Official Commentary to G.S. 15A-952 makes the following observation, which we think is deserving of emphasis:

"Subsections (b) and (c) require the advance filing of certain listed motions. The presence of a motion for a continuance at the head of [this] list is noteworthy. One of the most common complaints of citizen witnesses is that they are commanded to take time from their own affairs to attend court— and often sit around for several hours, or even days, before being dismissed and told they must come back yet another time because the case is continued."

G.S. 15A-952(e) provides that motions not made within the permitted time are waived. While the record in this case does not indicate the date on which defendant was arraigned, the motion for continuance was required to be filed prior to commencement of the 25 July 1977 Session of New Hanover Superior Court. G.S. 15A-952(c). Defendant's motion for a continuance not having been made in apt time, it is deemed waived, and his third assignment of error is overruled.

While our decision is based on G.S. 15A-952, we note in passing that defendant's case had already been continued once, there was no indication defendant's alibi witnesses would be able to appear and testify at any future trial date, and defendant had not sought to obtain their attendance by means of G.S. 15A-813. Moreover, Moses Isler's deposition was read to the jury, and there is no evidence in the record that defendant's other alibi witnesses could testify concerning his whereabouts on 11 July 1973. Under such circumstances denial of his motion for continuance was not prejudicial error, even if G.S. 15A-952 were inapplicable to the present case. *See, e.g., State v. Tolley,* 290 N.C.

349, 226 S.E. 2d 353 (1976); *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976); *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972).

By his fourth assignment of error defendant contends the trial court erred in denying his motion in arrest of judgment. This is a formal entry which incorporates by reference defendant's contention that he was denied a speedy trial. No error of law appears on the face of the record, and this assignment is overruled. *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537 (1975).

Defendant having failed to show prejudicial error, the verdict and judgment must be upheld.

No error.