HUNTER JR., Robert N., Judge.
Mohammed Nasser Jilani ("Defendant") appeals following a jury verdict finding him guilty of possession of marijuana. On appeal, Defendant contends the court erred in denying his motions to dismiss for lack of sufficient evidence he possessed marijuana and violation of his constitutional right to a speedy trial. We find no error.
I. Factual and Procedural History
On 23 March 2015, a Wake County Grand Jury indicted Defendant for the following: (1) possession with the intent to sell or deliver marijuana; (2) felonious possession of a stolen firearm; and (3) possession of a firearm by a convicted felon.
On or about 21 April 2015, Defendant sent the trial court a motion for speedy trial.[1] On 27 April 2015, Defendant wrote to the clerk of superior court, asking her to file his motion for speedy trial.
On 28 May 2015, the Honorable Donald W. Stephens held a hearing. At the hearing, Colby Barry represented Defendant. Barry informed the court his relationship with Defendant "deteriorated a little over the past weeks[.]" Defendant discussed his writ of habeas corpus, part of which he based on ineffective assistance of counsel.[2] Defendant asserted he planned on hiring another attorney. The court released Barry as Defendant's counsel. The court asked the State to calendar Defendant's case for 15 June 2015. On the same day, the court entered an order, instructing the public defender's office to appoint another lawyer to be Defendant's counsel.
On 16 July 2015, Defendant appeared before Judge Stephens for arraignment. His new assigned counsel, Taylor Manning, informed the court Defendant would not speak with him. Defendant asserted Manning "failed to investigate ... possible defenses[.]" After colloquy, the court found Defendant waived his right to counsel and elected to proceed pro se . The court released Manning as Defendant's counsel.
After arraignment, the court instructed the State to provide additional discovery to Defendant and set the case for trial. Defendant moved for dismissal, based on denial of his Sixth and Fourteenth Amendments rights.[3] He argued prior counsel's "deficient performance has caused such irreparable prejudice to the preparation" of his case. The court denied the motion. Defendant also filed a motion for speedy trial, asking "to be tried immediately, soon as possible" due to his eight month incarceration. The court took the motion under consideration.
On 13 October 2015, Defendant filed a letter addressed to the court. In the letter, Defendant asserted the following. He experienced "issues" with the assistant district attorney and asserted she acted "highly unprofessional as well as unethical." The assistant district attorney insisted Manning still represented Defendant. The State prevented him from appearing in court on motions he filed. The assistant district attorney did not notify Defendant of any court dates, or changes of court dates.
On 19 October 2015, attorney Andrew McCoppin filed, on Defendant's behalf, a request for arraignment, a motion for complete recordation of all proceedings, and a motion for speedy trial. The next day, Defendant filed a letter, asserting he waived his right to counsel in July, but the public defender's office appointed counsel twice since then. Since July, Defendant had not returned to court and requested to be brought to court as soon as possible.
On 29 October 2015, the Honorable W. Osmond Smith held a hearing. The State contended after the court released Manning, Defendant contacted Manning, indicating he wanted Manning to represent him. The court characterized the appointment of McCoppin as "error or inadvertent" and vacated McCoppin's appointment. In court, Judge Smith signed the copy of Defendant's prior waiver of counsel, "[r]eaffirming" it. The court instructed the State to set a new court date, so it could hear Defendant's motions. When Defendant asked to be heard at that hearing, the court stated it could not hear the motions then, and the earliest date available was 26 January 2016.
On 25 January 2016, another Wake County Grand Jury indicted Defendant, via a superseding indictment, for possession of a firearm by a convicted felon.
On 5 February 2016, Defendant filed a motion and requested a hearing.[4] On 9 February 2016, Defendant filed a motion for removal of district attorneys. In his motion, Defendant asserted the following. The assistant district attorney used "the abuse of discretion and abuse of process to punish and bully [him] for choosing to proceed with nothing more than the law clearly allows [him] to do." At the October 2015 hearing, he tried to speak with the assistant district attorney, but she responded, "[She] ha[d] more important things to do[.]" Additionally, the assistant district attorney served discovery in a form Defendant could not use and gave Defendant no time to prepare for a 25 January 2016 court date.
On 17 February 2016, Defendant filed an attachment to his motion for removal of district attorneys. Defendant asserted the State set trial for 25 January 2016 and then 26 January 2016. However, "without notice or explanation" the assistant district attorney cancelled the trial.
On 8 April 2016, Judge Stephens sent a letter to the senior assistant district attorney. In the letter, Judge Stephens wrote, "If the above-styled cases are not tried or otherwise resolved prior to the end of my administrative week of May 2, 2016, I will have the defendant brought before the Court to review the conditions of his pretrial release."
On 27 April 2016, the Honorable Paul C. Ridgeway held a hearing on several pretrial motions. Defendant moved to dismiss the case, arguing he received ineffective assistance of counsel, which prejudiced his defense. Defendant also argued the State violated his right to a speedy trial. The State asserted it spoke with Defendant, and he agreed to a plea arrangement. However, when the State "brought him out, he declined to do a plea." The trial could be not be held the day the State "brought [Defendant] out" due to another scheduled jury trial. Following that court appearance, the State set Defendant's case for trial. The court denied Defendant's motion.
On 28 April 2016, the court called Defendant's case for trial.
The State called Steven Chatsworth. Chatsworth lived in Cary, North Carolina. On or about 30 October 2014, Chatsworth left home to run errands. When he returned home, he could "see that cushions and stuff were taken off [his] couch and it was obvious that somebody had been in there ... rummaging through the house[.]" Chatsworth went to his car and called the police. Police arrived and looked through his home. After their search, Chatsworth gave officers a list of missing items, which included "numerous" guns. One of the missing guns was a Bersa .380.
The State next called Shawn Thompson, an officer with the Raleigh Police Department. On 12 December 2014, around 9:30 p.m., Officer Thompson patrolled Capital Boulevard. While traveling southbound, he noticed a silver Toyota. Officer Thompson decided to "do a basic check to see if there was any traffic violations" and ran the car's information through the police database.
The cars drove up to a red light. The Toyota stopped first at the light. As Officer Thompson pulled up next to the Toyota, he saw the driver adjust his hood "up over his face[.]" The passenger, Defendant, leaned back in his seat, got lower in the seat, and stared straight ahead. Based on his training and experience, Officer Thompson thought the behavior was unusual. He also thought the driver and Defendant did not want him to fully see their faces.
When the light turned green, the Toyota turned left on Trawick Road, and Officer Thompson continued traveling down Capital. Fifty yards down Capital, the police database alerted Officer Thompson of two outstanding warrants for Scott Bellmavis. Based on the picture in the alert, Officer Thompson concluded Bellmavis drove the Toyota.
The alert also gave Officer Thompson Bellmavis's address. Officer Thompson drove to Bellmavis's home and radioed other officers for backup. When he arrived at Bellmavis's home, he saw a car parked on the street. Officer Thompson slowly drove past the car to see if it was the Toyota from earlier. The interior light was on. He saw no one sat in the driver's seat, but Defendant sat in the front passenger seat. Officer Thompson notified other officers Bellmavis was no longer in the car and may be inside the home.
Officer Thompson parked "three car lengths down[.]" He walked up to the driver's side of the Toyota. As he neared the car, he "made [Defendant] aware that ... [he] was coming to speak with him[.]" Defendant rolled down the driver's side window. Officer Thompson "immediately" smelled the odor of marijuana, a "combination" of unburnt and burnt marijuana.
Officer Thompson asked Defendant about Bellmavis and made other "short conversation[.]" Defendant told Officer Thompson that Bellmavis went inside the home. As they talked, Officer Thompson noticed Defendant "appeared to be nervous. He just moved around, adjusted himself in his seat a few times." Defendant also spoke "pretty fast" and "slightly" shook "a little bit[.]" This level of nervousness "was slightly elevated" compared to the normal levels of nervousness seen during other traffic stops.
When Officer Thompson "made [Defendant] aware" he smelled marijuana, Defendant "appeared to get a little bit more nervous and really forthcoming with the information." Defendant told Officer Thompson he "probably had some marijuana" in his pocket. Typically, "subjects" do not tell officers "information like that[.]"
Officer Thompson asked Defendant if he had any weapons. Defendant pulled out a knife from his pocket and gave it to Officer Thompson. Officer Thompson thought Defendant's admissions about having the marijuana and the knife were "a little suspicious[,]" and Defendant "[was] keeping [Officer Thompson] out of that vehicle."
Officer Thompson saw "a partially smoked marijuana blunt" near the driver's seat. Because he thought both Defendant and Bellmavis had marijuana, he suspected there may be more marijuana in the car. Officer Thompson asked Defendant to "limit his movement[.]" Officer Thompson stepped back to "kind of assess[ ]" the house and noticed Defendant "shifted a little bit and looked around, looked to his left and looked around down into the rear seat and rear floor area." Officer Thompson again asked Defendant to "limit his movement" until Officer Thompson "made contact with" Bellmavis. Defendant "turned to his left and shifted back in his seat looking down."
Bellmavis walked out of the home holding a rifle case. Officer Thompson introduced himself and asked Bellmavis for his name and if he lived at the home. Bellmavis gave his name and told Officer Thompson he lived at the home. Officer Thompson asked Bellmavis if there were guns in the case. Bellmavis answered yes. Officer Thompson had Bellmavis place the case on the porch. Officer Thompson frisked Bellmavis for weapons, but did not find any.
From the front porch, Officer Thompson yelled out to Defendant and asked him to get out of the car. Defendant got out of the car and walked over to Officer Thompson. Officer Thompson and Defendant discussed the marijuana Defendant had, and Officer Thompson searched Defendant's front pockets for it. As Officer Thompson searched Defendant, Officer Tom Webb and Lieutenant Steve Gunter arrived.
Officer Webb stayed with Bellmavis and Defendant while Officer Thompson and Lieutenant Gunter searched the car. Officer Thompson started at the driver's seat, where he earlier saw the marijuana blunt. When he opened the center console, "there was a large bag containing a green leafy substance which appeared to be marijuana." The center console was within arm's reach of Defendant.
Under the rear "right" seat, Officer Thompson saw a handle of a pistol. He also noticed the seat "was slightly slanted back." In the pocket on the back of the front passenger's seat, Officer Thompson found a Bersa .380 and a digital scale. The digital scale had "green leafy marijuana residue" on it.
When officers searched the trunk, they found another digital scale, a small gun case with two guns inside, and clear, empty mason jars, which had marijuana residue inside. Officer Thompson "ran" the serial numbers of the guns in a database. The database alerted Officer Thompson the Bersa .380 was stolen on 28 October 2014 in Cary, North Carolina from Steven Chatsworth.
Officer Thompson told Defendant and Bellmavis of his "findings," and neither acted surprised. Officers then "ran" Defendant's information. The database notified officers Defendant had been previously convicted of a felony. The database also gave officers Defendant's address, which was "about five streets" away from Chatsworth's home in Cary.
Officer Thompson collected all the evidence and submitted it to City-County Bureau of Identification ("CCBI"). CCBI determined the marijuana in Defendant's pocket weighed 0.38 grams (approximately one-tenth of an ounce) and the marijuana in the center console weighed 71.60 grams (approximately two-and-a-half ounces).
The State rested.[5] Defendant moved to dismiss for insufficient evidence. The trial court denied his motion. Defendant did not present any evidence and renewed his motion to dismiss. The trial court denied the motion.
After deliberation, the jury informed the court it reached an impasse on the felonious possession of a stolen firearm and possession of a firearm by a convicted felon charges. The court declared a mistrial as to those charges. The jury found Defendant guilty of possession of marijuana in an amount greater than one-and-a-half ounces. The court sentenced Defendant to 6 to 17 months imprisonment, with credit for time served. On 9 May 2016, Defendant filed timely notice of appeal.
II. Jurisdiction
Defendant filed a petition for writ of certiorari requesting appellate review in the event he failed to give proper notice of appeal.
Rule 4 of the North Carolina Rules of Appellate Procedure requires the appealing party to "designate the judgment or order from which appeal is taken[.]" N.C. R. App. P. 4(b) (2017). When reviewing an error in a notice of appeal, our Court considers whether "the notice of appeal as a whole indicates the defendant's intent to appeal from a specific judgment" and whether the appellee was misled by the mistake. State v. Sitosky , 238 N.C. App. 558, 561, 767 S.E.2d 623, 625 (2014) (citation omitted).
In his notice of appeal, Defendant listed the date of the judgment as 2 May 2016. However, the trial court entered judgment on 3 May 2016. Defendant's notice of appeal correctly listed the file number of the judgment from which he seeks appeal. The State did not file a response and did not otherwise assert Defendant's mistake misled the State. We conclude Defendant's notice of appeal indicates his intent to appeal from the 3 May 2016 judgment. Accordingly, we deny Defendant's petition for writ of certiorari as moot.
III. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting State v. Powell , 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) ). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).
Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
Fritsch , 351 N.C. at 379, 526 S.E.2d at 455 (internal citations and quotation marks and italics omitted) (alteration in original). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192-93, 451 S.E.2d 211, 223 (1994) (citation omitted).
IV. Analysis
A. Possession of Marijuana
Defendant contends the State failed to present sufficient evidence he possessed the marijuana in the center console. We disagree.
Possession of contraband can be actual or constructive. State v. Harvey , 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). "Evidence of constructive possession is sufficient if it would allow a reasonable mind to conclude that the defendant had the intent and capability to maintain control and dominion over the contraband." State v. Earhart , 134 N.C. App. 130, 136, 516 S.E.2d 883, 888 (1999) (citing State v. Beaver , 317 N.C. 643, 346 S.E.2d 476 (1986) ). Mere proximity to contraband in a vehicle is insufficient for constructive possession. State v. Weems , 31 N.C. App. 569, 571, 230 S.E.2d 193, 194-95 (1976) (citation omitted). Thus, when a person does not have exclusive possession of the place, the State must show "other incriminating circumstances" for constructive possession. State v. Davis , 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (citation omitted).
Recently, our State Supreme Court summarized what our Courts consider for other incriminating circumstances:
(1) the defendant's ownership and occupation of the property ...; (2) the defendant's proximity to the contraband; (3) indicia of the defendant's control over the place where the contraband is found; (4) the defendant's suspicious behavior at or near the time of the contraband's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the contraband.
State v. Chekanow , 370 N.C. 488, 496, 809 S.E.2d 546, 552 (2018) (citations omitted). Additionally, our Courts consider whether defendant admitted to possession of some contraband. State v. McNeil , 359 N.C. 800, 813, 617 S.E.2d 271, 279 (2005) ; State v.Johnson , 217 N.C. App. 605, 610-11, 720 S.E.2d 441, 444 (2011) (considering the fact officers found cocaine on defendant's person when analyzing constructive possession of cocaine found on the floor by defendant's feet).
Here, the State did not provide any evidence of Defendant's actual possession of the marijuana found in the center console. Additionally, Defendant did not have exclusive possession of the center console. Thus, our case law requires proof of additional incriminating circumstances.
After a review of the totality of the circumstances, and viewing the evidence in the light most favorable to the State, we conclude the State presented substantial evidence Defendant constructively possessed the marijuana in the center console. Defendant occupied the car where Officer Thompson found the marijuana. Defendant, in the front passenger seat next to the center console, sat in close proximity to the marijuana. Chekanow , 370 N.C. at 496, 809 S.E.2d at 552. While the "mere presence of the defendant in an automobile in which illicit drugs are found does not, without more, constitute sufficient proof of his possession of such drugs[,]" the State presented evidence of other incriminating circumstances, and this fact does not stand alone. Weems , 31 N.C. App. at 571, 230 S.E.2d at 194 (quotation marks and citation omitted).
Officer Thompson testified he "immediately" smelled the odor of marijuana in the car. See State v. Matias , 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001) (considering the odor of marijuana when reviewing for incriminating circumstances). Also, Defendant "appeared to be nervous" and his level of nervousness "was slightly elevated" as compared to the normal level of nervousness. State v. Butler , 356 N.C. 141, 147, 567 S.E.2d 137, 141 (2002) (considering a defendant's nervousness when reviewing for incriminating circumstances).
After Officer Thompson instructed Defendant to "limit his movement[,]" he saw Defendant "shift[ ] ... look[ ] to his left and look[ ] around down into the rear seat and rear floor area." Officer Thompson also saw Defendant turn to his left and look down. Officer Thompson found scales with marijuana residue hidden in the back pocket of Defendant's seat, and in the direction to which Defendant turned.
Defendant spoke openly with Officer Thompson about the marijuana he had on his person. His admissions to Officer Thompson provided another link between him and the marijuana in the center console. McNeil , 359 N.C. at 813, 617 S.E.2d at 279 ; Johnson , 217 N.C. App. at 610-11, 720 S.E.2d at 444.
These additional circumstances, beyond just mere proximity to the contraband, support a reasonable inference Defendant constructively possessed the marijuana in the center console. See Harvey , 281 N.C. at 13-14, 187 S.E.2d at 714. Accordingly, the trial court did not err in denying Defendant's motion to dismiss.
B. Right to Speedy Trial
Defendant argues the State violated his constitutional right to a speedy trial by waiting seventeen months to try him after his arrest. We disagree.
The Sixth Amendment of the United States Constitution states, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial[.]" U.S. Const. amend. VI. "This provision is made applicable to the states by the Fourteenth Amendment." State v. Washington , 192 N.C. App. 277, 282, 665 S.E.2d 799, 803 (2008) (citation omitted). "Likewise, Article I, Section 18 of the North Carolina Constitution provides that '[a]ll courts shall be open[ ][to] every person ... without favor, denial, or delay.' " Id. at 282, 665 S.E.2d at 803 (quoting N.C. Const. art. 1, § 18 ) (all alterations in original).
In Barker v. Wingo , 407 U.S. 514, 33 L.Ed. 2d 101 (1972), the United States Supreme Court set out the following factors for consideration: (1) the length of delay; (2) the reason for the delay; (3) Defendant's assertion of his right; and (4) prejudice to Defendant. Id. at 530, 33 L.Ed. 2d at 117. No single factor is determinative in our analysis:
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.
Id. at 533, 33 L.Ed. 2d. at 118. Our courts have adopted and applied this test. See State v. Roberts , 18 N.C. App. 388, 391, 197 S.E.2d 54, 56-57 (1973). We address these factors in turn.
i. The length of the delay
Courts consider the length of the delay to be a "triggering mechanism." State v. Hughes , 54 N.C. App. 117, 119, 282 S.E.2d 504, 506 (1981). Thus, if the delay of the trial raises at least a "question of reasonableness[,]" the Court will examine the other factors. Id. at 119, 282 S.E.2d at 506. "The United States Supreme Court has found postaccusation delay presumptively prejudicial as it approaches one year. However, presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." State v. Grooms , 353 N.C. 50, 62, 540 S.E.2d 713, 721 (2000) (citations and quotation marks omitted). "[A] defendant's right to a speedy trial attaches upon being formally accused of criminal activity, by arrest or indictment." State v. Pippin , 72 N.C. App. 387, 391, 324 S.E.2d 900, 904 (1985) (citations omitted).
Here, seventeen months passed from the time the State arrested Defendant until Defendant's trial began. This delay is long enough to trigger examination of the other factors. See State v. Webster , 337 N.C. 674, 679, 447 S.E.2d 349, 351 (1994) (examining the other Barker factors for a sixteen month delay).
ii. The reason for the delay
"[The] defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution." Grooms , 353 N.C. at 62, 540 S.E.2d at 721 (citation omitted). If defendant meets his burden, "the State must 'offer evidence fully explaining the reasons for the delay and sufficient to rebut the prima facie showing or risk dismissal.' " Pippin , 72 N.C. App. at 391, 324 S.E.2d at 904 (quoting State v. McKoy , 294 N.C. 134, 240 S.E.2d 383 (1978) ) (citations omitted). Moreover, "[t]he proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort." State v. Hammonds , 141 N.C. App. 152, 160, 541 S.E.2d 166, 173 (2000) (citation omitted).
"Unavoidable delays and delays caused or requested by defendant do not violate his right to a speedy trial." State v. Spencer , 281 N.C. 121, 124, 187 S.E.2d 779, 781 (1972). "A criminal defendant who has caused or acquiesced in a delay will not be permitted to use it as a vehicle in which to escape justice." State v. Tindall, 294 N.C. 689, 695-96, 242 S.E.2d 806, 810 (1978) (citations omitted).
Here, Defendant argues the "particularly lengthy delay" establishes a prima facie showing of neglect or willfulness on the part of the State. He argues, consequently, the burden shifted to the State to justify the delay. However, in the case to which Defendant cites, the defendant waited thirty-five months for trial and the State placed the case on the calendar thirty-one times, but the State never called the case for trial. State v. Chaplin , 122 N.C. App. 659, 664, 471 S.E.2d 653, 656 (1996). Such is not the case here, and Defendant still bears the burden of showing neglect or willfulness on the part of the State. State v. Evans , --- N.C. App. ----, ----, 795 S.E.2d 444, 450 (2017) (citation omitted).
We note Defendant's dismissal of court-appointed attorneys, his pending pretrial motions, and backtrack on accepting a plea deal caused some of the delay. See State v. Friend , 219 N.C. App. 338, 344, 724 S.E.2d 85, 90 (2012) (holding the reasons for the delay were attributable "as much to" the defendant as to the State and the factor did not weigh in favor of a speedy trial violation). Defendant failed to meet his burden of showing the State's willfulness or neglect caused the remainder of the delay.
iii. Defendant's Assertion of His Right to a Speedy Trial
Defendant asserted his right to a speedy trial in several pretrial motions and at several hearings.
iv. Prejudice to Defendant
Finally, we consider whether Defendant suffered prejudice as a result of the delay of his trial. "Courts will not presume that a delay in prosecution has prejudiced the accused. The defendant has the burden of proving the fourth factor." Hughes, 54 N.C. App. at 120, 282 S.E.2d at 506. As to this factor, the United States Supreme Court has recognized three objectives of the right to a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532, 33 L.Ed. 2d at 118 (citations omitted). Of these forms of prejudice, the most serious is the last, as "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. at 532, 33 L.Ed. 2d at 118.
Defendant asserts the violation of his right to a speedy trial prejudiced him in the following ways: (1) incarceration for a period longer than a sentence he would have to serve; (2) inability to support his family; and (3) anxiety. Defendant does not contend the delay prejudiced his ability to defend himself.
v. Balancing the Barker Factors
After balancing the four factors, we hold the State did not violate Defendant's constitutional right to a speedy trial. Accordingly, the trial court did not err by denying Defendant's motion to dismiss.
V. Conclusion
For the foregoing reasons, we find no error.
NO ERROR.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.

Defendant asserts "the motion was filed on 27 April 2015." The letter Defendant wrote on 27 April 2015 asked the clerk to file the motion. There is nothing in the record indicating when, or if, the clerk or Defendant actually filed the motion.

At the hearing, Defendant asserted he mailed his writ of habeas corpus on 12 May 2015. The writ is not included in the record on appeal. Additionally, at the 16 July 2015 hearing, the State asserted the court denied Defendant's writ of habeas corpus, but the denial is also not included in the record on appeal.

At this hearing, Defendant made several oral motions, some of which are at issue on appeal. In the interest of brevity, this opinion only includes the relevant motions.

Defendant's motion did not specify on which motions he requested a hearing.

The State also called Officer Tom Webb, Lieutenant Steve Gunter, forensic drug chemist Lauren Wiley, and crime scene investigator Michael Galloway. Their testimonies are not dispositive to the issues on appeal.