WILLIAM JAMES, AN ELECTOR, FOR HIMSELF AND OTHERS SIMILARLY SITUATED; WILLIAM "BILL" FLETCHER, CANDIDATE FOR SUPERINTENDENT OF PUBLIC INSTRUCTION; AND TRUDY WADE, CANDIDATE FOR GUILFORD COUNTY COMMISSIONER AT LARGE v. GARY O. BARTLETT, AS EXECUTIVE DIRECTOR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; LARRY LEAKE, ROBERT CORDLE, GENEVIEVE C. SIMS, LORRAINE G. SHINN, AND CHARLES WINFREE, IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE STATE BOARD OF ELECTIONS; THE STATE BOARD OF ELECTIONS; AND ROY COOPER, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA; AND JUNE S. ATKINSON AND W. BRITT COBB, INTERVENORS

IN RE ELECTION PROTEST OF BILL FLETCHER IN THE NOVEMBER 2, 2004, GENERAL ELECTION FOR SUPERINTENDENT OF PUBLIC INSTRUCTION

IN RE ELECTION PROTEST OF DR. TRUDY WADE IN THE NOVEMBER 2, 2004, GENERAL ELECTION FOR GUILFORD COUNTY COMMISSIONER AT LARGE

No. 602PA04-2

(Filed 4 February 2005)

## 1. Jurisdiction— subject matter—election challenge

The North Carolina Supreme Court had subject matter jurisdiction to consider an election protest and declaratory judgment action by a candidate for Superintendent of Public Instruction, an office established by Article III of the North Carolina Constitution. The North Carolina Supreme Court is vested by the North Carolina Constitution with the jurisdiction to review any decision of the courts below and the comprehensive statutory scheme to resolve election protests contemplates appellate review of the Wake County Superior Court. Although the North Carolina Constitution mandates that a contested election for an Article III office be determined by the General Assembly "in the manner prescribed by the law," the General Statutes require only that the General Assembly determine the outcome of those Article III elections with a numerical tie (not the case here). N.C. Const. art. VI § 5; N.C.G.S. § 147-4.

**JAMES v. BARTLETT**

[359 N.C. 260 (2005)]

**2. Elections— challenge to provisional ballots—timely**

A challenge to the acceptance of out-of-precinct provisional ballots after an election was timely because plaintiffs did not have adequate notice before the election that these ballots would be counted. Out-of-precinct provisional ballots have not been counted in the past and a letter from the Board of Elections on the subject before the election stated that the Board would enforce North Carolina law. This did not indicate that the ballots would be counted.

**3. Elections— provisional ballots—out-of-precinct—improperly accepted**

The State Board of Elections improperly accepted provisional ballots cast on election day at precincts in which the voters did not reside. North Carolina statutes unambiguously require voters to cast their ballots in the precincts of residence, and the precinct system is woven throughout the fabric of the election laws. Voters are eligible to cast a provisional ballot only if they are absent from the records of the precinct where they reside because those records are incomplete or inaccurate; voters who reside outside the precinct at which they attempt to vote must be directed to their proper voting place. N.C.G.S. § 163-55.

Justices PARKER and EDMUNDS did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of orders entered on 17 December 2004 by Judge Henry W. Hight, Jr. in Superior Court, Wake County. Heard in the Supreme Court 18 January 2005.

*Tharrington Smith, L.L.P., by Michael Crowell, and Hunter, Higgins, Miles, Elam and Benjamin, P.L.L.C., by Robert N. Hunter, Jr., for plaintiff-appellants and for petitioner-appellants Bill Fletcher and Trudy Wade.*

*Roy Cooper, Attorney General, by Christopher G. Browning, Jr., Solicitor General, and Susan K. Nichols and Alexander McC. Peters, Special Deputy Attorneys General, for defendant-appellees.*

*Wallace, Nordan & Sarda, L.L.P., by John R. Wallace and Joseph A. Newsome, for intervenor-defendant-appellees and for respondent-appellees June S. Atkinson and John Parks.*

**JAMES v. BARTLETT**

[359 N.C. 260 (2005)]

*Anita S. Earls for Rodney J. Sumler, Aljihad Shabazz, Democracy North Carolina, League of Women Voters of North Carolina, North Carolina Fair Share, Southeastern Church Action for Safe and Just Communities, and Winston-Salem Voting Rights Coalition, amici curiae.*

*Marshall Hurley, PLLC, by Marshall Hurley, and Respess & Jud, by W. Wallace Respess, Jr., for Steven W. Troxler, amicus curiae.*

WAINWRIGHT, Justice.

This case involves election disputes between plaintiff Bill Fletcher and defendant-intervenor June Atkinson, candidates for North Carolina Superintendent of Public Instruction, and plaintiff Trudy Wade and respondent John Parks, candidates for Guilford County Commissioner at large.[1]

The overriding issue that has been thrust upon this Court in the present case, and the concern of this Court, is *not* the ultimate outcome of the two elections involved. Rather, the sole issue and concern for this Court in this matter is whether these two elections were conducted in accord with the will of the people of North Carolina, as expressed by them in their Constitution and in their statutes as enacted by their representatives.

The instant case involves three separate election challenges[2]

---

1. We note that Fletcher, like Wade, is a plaintiff in the declaratory judgment action brought by William James and a petitioner in his protest. For convenience, we refer to Fletcher and Wade only as plaintiffs. Additionally, we note that Atkinson is both a defendant-intervenor in the declaratory judgment action and a respondent in Fletcher's election protest. For convenience, we refer to Atkinson only as defendant-intervenor.

2. The three challenges are as follows: (1) An election protest filed with the North Carolina State Board of Elections by Bill Fletcher, candidate for the office of North Carolina Superintendent of Public Instruction. His opponent, June Atkinson, is a party to this case. (2) An election protest filed with the North Carolina State Board of Elections by Trudy Wade, candidate for Guilford County Commissioner at large. Her opponent, John Parks, is a party to this case. (3) A declaratory judgment action filed in Wake County Superior Court by Fletcher, Wade, and William James, a Mecklenburg County voter. Plaintiffs in this case requested the trial court to determine the constitutionality of out-of-precinct provisional voting. Additionally, plaintiffs unsuccessfully sought a temporary restraining order and injunction barring the State Board from counting out-of-precinct provisional votes. Defendants in this case are the North Carolina State Board of Elections, Gary O. Bartlett, Executive Director of the State Board, members of the State Board, and the Attorney General. The trial court allowed motions to intervene in this matter filed by Atkinson and Britt Cobb, candidate for North Carolina Agriculture Commissioner. However, the trial court did not rule on a

which revolve around one substantive central issue: whether a provisional ballot cast on election day at a precinct other than the voter's correct precinct of residence may be lawfully counted in final election tallies.[3] Additionally, we address the following procedural issues raised by defendants and defendant-intervenors: (1) whether this Court has subject matter jurisdiction over Fletcher's election protest and (2) whether plaintiffs filed their claims in a timely manner.

## Subject Matter Jurisdiction

[1] We first address defendant-intervenor Atkinson and respondent Parks' contention that subject matter jurisdiction for Fletcher's election protest lies exclusively with the General Assembly because Article VI, Section 5 of the North Carolina Constitution gives the General Assembly exclusive jurisdiction to decide "contested election[s]" for offices established by Article III of the Constitution, which includes the office of Superintendent of Public Instruction.[4]

Article VI, Section 5 of the North Carolina Constitution mandates that "[a] contested election for any office established by Article III of this Constitution shall be determined by joint ballot of both houses of the General Assembly in the manner prescribed by law."

---

motion to intervene filed by Steve Troxler, also a candidate for North Carolina Agriculture Commissioner.

Fletcher and Wade appealed their election protests to Superior Court. These appeals were consolidated with the declaratory judgment action and assigned to Wake County Superior Court Judge Henry W. Hight, Jr. Defendants and defendant-intervenors filed motions to dismiss the declaratory judgment action pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) (2003). The trial court treated the motion to dismiss as a motion for summary judgment and entered an order granting summary judgment in favor of defendants and defendant-intervenors. Additionally, the trial court entered an order affirming the State Board's denial of Fletcher's election protest and entered an order affirming the denial of Wade's election protest. Plaintiffs have appealed these orders to this Court.

3. According to plaintiffs, approximately 75,000 provisional ballots were cast during the 2004 general election. Defendants maintain that 44,843 persons voted provisionally in the race for Superintendent of Public Instruction. According to defendants, only 11,310 of these persons who voted provisionally "are categorized as having voted in the 'incorrect precinct' in the final SEIMS report" and thus constitute the provisional ballots at issue in the Superintendent of Public Instruction election dispute. Plaintiffs contend 441 out-of-precinct votes were counted in the Guilford County Commissioner at large race, and thus there are 441 disputed votes in that race.

4. We note that "the question of subject matter jurisdiction may be raised at any time, even in the Supreme Court." *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85 (1986); *see also* N.C.G.S. § 1A-1, Rule 12(h)(3) (2003). Therefore, defendant-intervenor and respondent properly raised this defense on appeal.

N.C. Const. art. VI, § 5. The phrase "contested election" is undefined in our Constitution and in our case law. Article VI, Section 5 specifically vests the General Assembly with authority to determine "contested election[s]" only *"in the manner prescribed by law." Id.* (emphasis added).

The General Statutes describe only one situation that requires the General Assembly to determine an election dispute "by joint ballot of both houses of the General Assembly." *Id.* Section 147-4 provides that when two or more candidates for an Article III office receive the exact same number of votes, "one of them shall be chosen by joint ballot of both houses of the General Assembly." N.C.G.S. § 147-4 (2003). Because the instant case does not present a numerical tie, section 147-4 is inapplicable to this case.

The General Assembly has enacted a comprehensive statutory scheme to resolve "election protests" filed in any state or national election. *See id.* §§ 163-182.9 to 182.15 (2003). Under this statutory scheme, election protests may be filed with the County Board of Elections by any registered voter or candidate in the election according to the timetable set out in N.C.G.S. § 163-182.9. If the County Board determines that there is probable cause to believe that "a violation of election law or irregularity or misconduct has occurred," the County Board must conduct a formal evidentiary hearing and adjudicate the dispute in a quasi-judicial capacity. *Id.* § 163-182.10. After the County Board enters its final order, the party who filed the protest, or any candidate adversely affected by the County Board's decision, may appeal to the State Board of Elections. *Id.* § 163-182.11. An "aggrieved party" may appeal the State Board of Election's final decision to Wake County Superior Court for judicial review. *Id.* § 163-182.14; *see also id.* § 163-182.15(b)(2) (which governs election protests and clearly contemplates appellate review of the Wake County Superior Court decision by providing that when the decision of the State Board has been appealed to Wake County Superior Court, and that court has stayed certification of the election, the certificate shall be issued five days after the entry of the court's final order, "unless that court *or an appellate court* orders otherwise" (emphasis added)).

More importantly, our election statutes, including N.C.G.S. § 163-182.14, must comport with the scope of the judicial power established by the people of North Carolina in Article IV of the State Constitution. The North Carolina Constitution vests the Supreme Court with "jurisdiction to review upon appeal *any* decision of the courts below, upon *any* matter of law or legal inference." N.C. Const.

art. IV, § 12 (emphasis added). N.C.G.S. § 163-182.14, which vests the Wake County Superior Court with jurisdiction to entertain appeals from rulings of the State Board of Elections, must be construed consistently, if at all possible, with this constitutional provision. *See Mitchell v. N.C. Indus. Dev. Fin. Auth.*, 273 N.C. 137, 143, 159 S.E.2d 745, 750 (1968) (stating that "all doubts" must be resolved in favor of the constitutionality of a statute). Because Article IV, Section 12 of our state constitution grants this Court authority to exercise appellate review of "*any* decision of the courts below," the Supreme Court possesses jurisdiction to review orders of the Wake County Superior Court issued in election protests. Accordingly, Atkinson and Parks' argument that this Court does not have subject matter jurisdiction is without merit. Plaintiffs' appeal from the trial court orders in Fletcher's election protest and declaratory judgment action is properly before this Court.

## Timeliness

**[2]** Defendants contend, along with defendant-intervenor Atkinson and respondent Parks, that plaintiffs' failure to challenge the counting of out-of-precinct provisional ballots before the 2 November 2004 election renders plaintiffs' action untimely and precludes this Court from determining whether the State Board erred by counting those ballots. Defendants allege that plaintiffs knew or should have known the State Board would count out-of-precinct provisional ballots, but nonetheless chose to await the outcome of the election before challenging the results. The facts do not support defendants' allegations.

The 2004 election cycle was the first time in North Carolina history that State election officials counted out-of-precinct provisional ballots. Before the 2004 general election, plaintiff James wrote the State Board of Elections and specifically asked whether the Board planned to count such ballots. The Board's general counsel responded that "North Carolina law is clear on this issue. We have and will continue to enforce and administer the provisions as to provisional voting as set out in North Carolina law." The response of the Board's general counsel failed to indicate that the State Board of Elections would count out-of-precinct provisional ballots. This response, coupled with the absence of any clear statutory or regulatory directive that such action would be taken, failed to provide plaintiffs with adequate notice that election officials would count the 11,310 ballots now at issue. Plaintiffs' action was timely filed.

## In-Precinct Voting Requirement

**[3]** We next turn to the substantive issue presented in the present case: whether, in the November 2004 general election, the Board of Elections properly counted provisional ballots cast on election day at precincts in which voters did not reside.

At the outset, we note that the arguments presented within the parties' briefs are primarily devoted to the constitutional issue of whether the State Board's counting of out-of-precinct provisional ballots violated Article VI, Section 2 of the North Carolina Constitution. However, appellate courts must "avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds." *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002); *see also Union Carbide Corp. v. Davis*, 253 N.C. 324, 327, 116 S.E.2d 792, 794 (1960) ("Courts must pass on constitutional questions when, but only when, they are squarely presented and necessary to the disposition of a matter then pending and at issue."); *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957) ("[A] constitutional question will not be passed on even when properly presented if there is also present some other ground upon which the case may be decided."); *State v. Muse*, 219 N.C. 226, 227, 13 S.E.2d 229, 229 (1941) (an appellate court will not decide a constitutional question "unless it is properly presented, and will not decide such a question even then when the appeal may be properly determined on a question of less moment."). Applying this longstanding principle, we decline to reach plaintiffs' constitutional arguments, as the present case may be resolved on purely statutory grounds.

Section 163-55 of the North Carolina General Statutes sets forth the general rule that voters must cast ballots in their precincts of residence. This section, titled "Qualifications to vote; exclusion from electoral franchise," provides, in pertinent part:

> Every person born in the United States, and every person who has been naturalized, and who shall have *resided* in the State of North Carolina and *in the precinct* in which he offers to register and vote for 30 days next preceding the ensuing election, shall, if otherwise qualified as prescribed in this Chapter, be *qualified to register and vote in the precinct in which he resides*: Provided, that removal from *one precinct* to another in this State shall not operate to deprive any person of the *right to vote in the precinct* from which he has removed until 30 days after his removal.

N.C.G.S. § 163-55 (2003) (emphasis added). The plain language of the statute clearly and unambiguously states that a voter is "qualified to register *and vote in the precinct in which he resides.*" *Id.* (emphasis added). Furthermore, N.C.G.S. § 163-55 refers three separate times to "*the* precinct" and one additional time to "one precinct." Had the General Assembly intended that each voter be permitted to cast a ballot at his precinct of choice, this statute would surely have employed the phrase "*any* precinct" or "*a* precinct." "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). The plain meaning of section 163-55 is that voters must cast ballots on election day in their precincts of residence.[5]

The precinct voting system is woven throughout the fabric of our election laws. *See, e.g.,* N.C.G.S. § 163-128 (2003) (stating that counties shall be divided into precincts for the purpose of voting); N.C.G.S. § 163-82.15 (2003) (requiring that a voter report a move to a new precinct and vote in that precinct); N.C.G.S. § 163-85(c)(3) (2003) (allowing that any voter may be challenged on the basis that he does not live in the precinct where he attempts to vote); N.C.G.S. § 163-87 (2003) (providing that on the day of a primary or election, at the time a registered voter offers to vote, any other registered voter of that precinct may challenge); N.C.G.S. § 163-88 (2003) (requiring that a challenged voter prove his continued residency in the precinct and that the challenge shall be heard by the chief judge and judges of election of the precinct).

The conclusion that a provisional ballot must be cast in a voter's precinct of residence is supported by other regulatory and statutory provisions concerning the use of provisional ballots. In 2003, the General Assembly ratified N.C.G.S. § 163-166.11, which addresses voters who appear at a precinct polling place on election day but are not listed on the registration records for that precinct. Pursuant to section 163-166.11, such voters may cast a provisional ballot at the precinct and later have their ballots counted if it is determined that the voter was eligible to vote. Section 163-166.11 was created in response to Congress' passage of the Help America Vote Act (HAVA) of 2002, 42 U.S.C. §§ 15481-15485 (2002), which mandated that such

---

5. Absentee voting (N.C.G.S. §§ 163-227.2, -231, -248 (2003)) and election day voting at specially created "[o]ut-of-precinct" voting places (N.C.G.S. § 163-130.1 (2003)) are not at issue in the present case.

provisional ballots be made available for federal elections beginning in January 2004. Act of June 11, 2003, ch. 226, sec. 1, 2003 N.C. Sess. Laws 341, 353-54. HAVA, which does not apply to state and local elections, was initiated in the wake of allegations of irregularity and fraud in the 2000 presidential election. 42 U.S.C. § 15482(a) (2004) (stating that HAVA applies only in "election[s] for Federal office"). In our review, we have found no indication that Congress' intent in passing HAVA, or our state legislature's intent in passing N.C.G.S. § 163-166.11, was to enable voters to cast valid ballots outside their precincts of residence when such a vote would not otherwise be supported by state law.

Additionally, the precise circumstances under which provisional ballots may be cast are set out in Subchapter 10B of Title 8 of the North Carolina Administrative Code. The pertinent code section provides that a

> person is eligible to vote an official provisional ballot *if the person resides in the precinct* and either:
>
> (1) is a registered voter in the county and has moved into the precinct 30 days or more prior to the election and has not reported the change to the board of elections; or
>
> (2) claims to have applied for voter registration in the county but there is no record of the person's name on the registration records; or
>
> (3) was removed from the list, but the person maintains continuous eligibility within the county; or
>
> (4) disputes the voting districts (and ballots) to which the person has been assigned.

8 NCAC 10B .0103(d) (Supp. 2004) (emphasis added). Subchapter 10B further provides that if a voter does not appear on the list of registered voters for that precinct "and the responsible judge of election learns from the person that the person resides in a different precinct, the responsible judge *shall provide the person with adequate information in order to direct the person to the proper voting place*." *Id.* 10B .0103(e) (Supp. 2004) (emphasis added).

Thus, according to the State Board of Elections' own rules, a voter is "eligible" to cast an "official provisional ballot" only if he *resides in the precinct* and is absent from the registration records because those records are incomplete or inaccurate. Also, under the

Board's own regulations, when election officials are aware that a voter resides outside the precinct where he has presented himself to vote, those officials must direct the voter to his "proper voting place." "The procedural rules of an administrative agency 'are binding upon the agency which enacts them as well as upon the public.' " *Humble Oil & Ref. Co. v. Bd. of Aldermen*, 284 N.C. 458, 467, 202 S.E.2d 129, 135 (1974) (citations omitted).

These administrative regulations, as issued by the State Board of Elections pursuant to its rulemaking authority under N.C.G.S. § 163-22, are consistent with the statutory scheme set forth in N.C.G.S. § 163-82.15, which details the procedures election officials must follow when voters dispute registration records or present themselves at an incorrect precinct because of unreported moves prior to an election. Subsection 163-82.15(e), titled "Unreported Move to Another Precinct Within the County," concerns the procedures election officials must follow when a voter has moved to another precinct more than thirty days before the election but has failed to notify the county board of elections of that move as required by N.C.G.S. § 163-82.15(a). Under section 163-82.15(e), the precise procedure to be followed depends in part on whether the voter presents himself to vote in the correct precinct, *i.e.*, his current precinct of residency, or the incorrect precinct, *i.e.*, the precinct of his former residence. When the voter presents himself at the "new precinct" following an unreported move within the same county, section 163-82.15(e) provides that the county board "shall permit" the voter to cast a provisional ballot at that precinct upon written affirmation of the new address. If the voter appears at the "old precinct," however, section 163-82.15(e) mandates that "precinct officials there *shall* send the registrant to the new precinct, or, if the registrant prefers, to [a central location in the county to be determined by the county board]." N.C.G.S. § 163-82.15(e) (2003) (emphasis added). Like 8 NCAC 10B .0103(e), section 163-82.15(e) does *not* permit voters to cast provisional ballots outside their precincts of residence. Therefore, the State Board of Elections improperly counted provisional ballots cast outside voters' precincts of residence on election day in the 2004 general election.

It is indeed unfortunate that the statutorily unauthorized actions of the State Board of Elections denied thousands of citizens the right to vote on election day. It is well settled in this State that "the right to vote on equal terms is a fundamental right." *Northampton Cty. Drainage Dist. No. One v. Bailey*, 326 N.C. 742, 746, 392 S.E.2d 352,

355 (1990); *State ex rel. Martin v. Preston*, 325 N.C. 438, 454, 385 S.E.2d 473, 481 (1989); *Texfi Indus., Inc. v. City of Fayetteville*, 301 N.C. 1, 12, 269 S.E.2d 142, 149 (1980). "But the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441, 119 L. Ed. 2d 245, 258 (1992). This Court is without power to rectify the Board's unilateral decision to instruct voters to cast provisional ballots in a manner not authorized by State law. To permit unlawful votes to be counted along with lawful ballots in contested elections effectively "disenfranchises" those voters who cast legal ballots, at least where the counting of unlawful votes determines an election's outcome. Mindful of these concerns, and attendant to our unique role as North Carolina's court of last resort, we cannot allow our reluctance to order the discounting of ballots to cause us to shirk our responsibility to "say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.E.d 60, 72 (1803).

Additionally, we note that our State's statutory residency requirement provides protection against election fraud and permits election officials to conduct elections in a timely and efficient manner. *See People ex rel. Van Bokkelen v. Canaday*, 73 N.C. 198, 223 (1875) (holding that "every voter must register in the ward and in the precinct where he lives, and in no other, and must vote where he registers, the object being to prevent fraud by 'repeating.' "); 25 Am. Jur. 2d *Elections* § 3 (2004). The General Assembly recognized in ratifying N.C.G.S. § 163-55 that without a precinct residency requirement, there would be a generous magnification of the potential for mischief in the form of one person voting in numerous precincts.

In North Carolina, where most voters are not required to show identification before voting, a tremendous task is already placed upon precinct officials to ensure that potential voters are legitimately eligible and properly registered to vote. *See* N.C.G.S. § 163-166.12 (requiring voters to show identification only when they have "registered to vote by mail on or after January 1, 2003, and ha[ve] not previously voted in an election that includes a ballot item for federal office in North Carolina"). If voters could simply appear at any precinct to cast their ballot, there would be no way under the present system to conduct elections without overwhelming delays, mass confusion, and the potential for fraud that robs the validity and integrity of our elections process. Indeed, as the U.S. Court of Appeals for the Sixth Circuit has stated:

**JAMES v. BARTLETT**

[359 N.C. 260 (2005)]

The advantages of the precinct system are significant and numerous: it caps the number of voters attempting to vote in the same place on election day; it allows each precinct ballot to list all of the votes a citizen may cast for all pertinent federal, state, and local elections, referenda, initiatives, and levies; it allows each precinct ballot to list only those votes a citizen may cast, making ballots less confusing; it makes it easier for election officials to monitor votes and prevent election fraud; and it generally puts polling places in closer proximity to voter residences.

*Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 569 (6th Cir. 2004) (per curiam).

We conclude that it is but a perfunctory requirement that voters identify their proper precinct and appear within that precinct on election day to cast their ballots. Voters may identify their precinct via mail, telephone, Internet, or in person at their local boards of elections. Election officials are expected to work with voters to help them locate their correct precinct. Indeed, when a voter appears at the wrong polling place, election officials have a statutory duty to assist the voter in finding the correct precinct in which to vote. N.C.G.S. § 163-82.15(e).

In sum, North Carolina law does not permit out-of-precinct provisional ballots to be counted in state and local elections. Accordingly, we reverse the orders of the superior court and remand this case to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Justices PARKER and EDMUNDS did not participate in the consideration or decision of this case.