IN THE SUPREME COURT OF NORTH CAROLINA

No. 282PA24

Filed 17 October 2025

STATE OF NORTH CAROLINA

v.

CHARLOTTE CHEMUTI

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order dismissing an appeal and denying a petition for writ of certiorari entered on 10 October 2024 by the Court of Appeals and an order denying a motion to quash entered on 31 January 2024 by Judge Christine Underwood in District Court, Iredell County. Heard in the Supreme Court on 22 April 2025.

*Devereux & Banzhoff, PLLC, by Andrew B. Banzhoff; and Chandler Law PLLC, by Jennifer M. Chandler, for defendant-appellee.*

*Cranfill Sumner LLP, by Steven A. Bader, for appellants Town of Mooresville and the Mooresville Police Department.*

*Blau & Hynson, PLLC, by Warren D. Hynson; and Hayes Law Offices, PLLC, by Mark L. Hayes, for North Carolina Advocates for Justice, amicus curiae.*

*Edmond W. Caldwell Jr. and Jarrett W. McGowan for North Carolina Sheriffs' Association; Fred P. Baggett for North Carolina Association of Chiefs of Police; and Robert Seth Banks for North Carolina Conference of District Attorneys, amici curiae.*

DIETZ, Justice.

Criminal defendants generally have a constitutional right to compel the release of any evidence necessary to present a complete defense. *See United States v.*

*Nixon*, 418 U.S. 683, 711 (1974). In North Carolina, defendants in district court typically do this using a subpoena—a fairly effortless process that involves defense counsel completing a preprinted court form. *See* N.C.G.S. § 15A-802 (2023); N.C.G.S. § 1A-1, Rule 45.

But states can create special procedures to protect the confidentiality of certain records sought by criminal defendants. *Pennsylvania v. Ritchie*, 480 U.S. 39, 58–60 (1987). For example, states can require the defendant to demonstrate a need for the evidence and obtain a court order authorizing its release. *Id.* Likewise, states can require a trial court to first conduct an *in camera* review of the evidence and release only the portions the court finds favorable to the defendant and material to the outcome of the case. *Id.*

In 2016, the General Assembly created this sort of special procedure for certain recordings made by law enforcement agencies. *See* Act of June 30, 2016, S.L. 2016-88, § 1, 2016 N.C. Sess. Laws 263, 264–67 (codified at N.C.G.S. § 132-1.4A). The statute requires the requesting party to file a petition or complaint in superior court and affords the court broad discretion to determine which portions of the recording, if any, should be produced. N.C.G.S. § 132-1.4A(g) (2023); *see also In re McClatchy Co.*, 386 N.C. 77, 94 (2024).

As explained below, this statutory procedure supplants the use of a subpoena and is now the exclusive means to obtain these recordings for use in a criminal case. The statute expressly applies to anyone "seeking to obtain evidence to determine legal

issues in a current or potential court proceeding" and makes no exception for criminal defendants. N.C.G.S. § 132-1.4A(g).

This statutory procedure also does not unconstitutionally burden criminal defendants' access to these recordings. The procedure has changed; the constitutional standard has not. *See Ritchie,* 480 U.S. at 58–60. Although the superior court has discretion in selecting which portions of the requested recording, if any, should be released, our precedent requires the court to exercise that discretion consistent with the defendant's constitutional rights to due process and compulsory process. *State v. Tindall,* 294 N.C. 689, 698 (1978).

In sum, the only practical change brought about by N.C.G.S. § 132-1.4A is the addition of an extra procedural step to obtain evidence needed for a complete defense. We acknowledge that this change may impose additional burdens on defendants, their counsel, and the courts. But the decision to impose those burdens, in an effort to protect material the law deems confidential, is a permissible policy choice of the legislature. This Court is therefore bound to respect it. Accordingly, we vacate the district court's order enforcing the subpoena in this case and remand to permit an appropriate request in superior court under N.C.G.S. § 132-1.4A.

## Facts and Procedural History

In 2023, law enforcement officers from the Mooresville Police Department arrested defendant Charlotte Chemuti for resisting a public officer.

To prepare for trial, Chemuti served a subpoena on the police department seeking "any bodycam videos showing the incident, arrest, and incarceration." The Town of Mooresville sent a written response to the subpoena on behalf of its police department. The town argued that the subpoena sought release of confidential recordings protected under N.C.G.S. § 132-1.4A and that those recordings could only be released as provided by that statute and not by subpoena.

A week later, without any notice to the town, Chemuti filed a request with the district court to order the release of the body camera recordings. The district court, again without notice to the town, granted the motion. The court's order noted that the town's written response was "not a proper motion to quash."

After receiving the district court's order and a new subpoena, the town filed a written motion to quash with the court. The town's motion explained that the recordings were covered by N.C.G.S. § 132-1.4A and could not be released without an order from the superior court. The town also noted that the statute provided it with a right to notice and opportunity to be heard in superior court before any ruling on Chemuti's request.

The district court later entered a new order with detailed reasoning. In that new order, the court recognized that criminal defendants "routinely file petitions in superior court for the release of bodycam recordings pursuant to N.C.G.S. § 132-1.4A(f)" and that the town and its police department "routinely enter consent agreements which include a protective order and a consent release of these bodycam

recordings after receipt of a petition under N.C.G.S. § 132-1.4A(f)." But the court also determined that "while a petition pursuant to N.C.G.S. § 132-1.4A(f) is the generally accepted practice for obtaining bodycam footage, that it is not the only way to obtain that information" and that criminal defendants in district court have "the power to subpoena law enforcement to appear and produce bodycam footage." As a result, the court ordered the town to comply with the subpoena.

The town promptly appealed the district court's order to the Court of Appeals and alternatively filed a petition for a writ of certiorari with that court. The Court of Appeals dismissed the appeal for lack of appellate jurisdiction and denied the accompanying petition. *State v. Chemuti*, No. 24-393 (N.C. Ct. App. Oct. 10, 2024) (order).

The town then filed a petition for a writ of certiorari with this Court seeking review of the Court of Appeals order or, alternatively, direct review of the district court's order. We allowed the town's petition on both grounds.

## Analysis

### I.     Court of Appeals order

The heart of this case is the proper interpretation of N.C.G.S. § 132-1.4A. But first, we must briefly address the Court of Appeals order dismissing the town's appeal for lack of appellate jurisdiction. The Court of Appeals ruled that the order compelling the town to comply with the subpoena did not deprive the town of a substantial right that would be lost absent immediate appeal. *State v. Chemuti*, No. 24-393 (N.C. Ct.

App. Oct. 10, 2024) (order). It therefore dismissed the town's appeal for lack of jurisdiction.

This was error. We have long held that orders compelling the disclosure of information allegedly subject to a statutory confidentiality protection are immediately appealable as affecting a substantial right. *Sharpe v. Worland*, 351 N.C. 159, 164 (1999). This is so because, if a litigant is "required to disclose the very documents that it alleges are protected from disclosure" while awaiting a final judgment, the confidentiality is permanently lost. *Id.* Even if the litigant ultimately prevails on appeal after final judgment and secures a ruling that the documents must remain confidential, it is too late. The documents will have already been disclosed. A belated appellate victory cannot unring that bell.

Moreover, as we held in *Sharpe*, for purposes of assessing appellate jurisdiction, the reviewing court should not examine the merits of the litigant's claim that the information is statutorily protected. *Id.* at 165. So long as the litigant asserts a plausible basis for the statutory protection that is not "frivolous or insubstantial," that will suffice to show that "the challenged order affects a substantial right." *Id.* at 166.

In its Court of Appeals brief, the town did everything it was supposed to do to confer appellate jurisdiction. It included a detailed statement of the grounds for appellate review arguing that the order affected a substantial right. The town cited *Sharpe* and a long line of cases following it, explained why the town believed the

recordings were protected from release under N.C.G.S. § 132-1.4A, and asserted that these "statutory protections cannot be restored once the recordings are released." Because the town articulated a plausible basis for a statutory confidentiality protection that would be lost absent immediate appeal, the town's brief "adequately explained why the particular facts of this case satisfy the substantial rights test." *Gardner v. Richmond County*, 386 N.C. 594, 595 (2024). Thus, the Court of Appeals erred by dismissing the appeal.

Ordinarily, when the Court of Appeals wrongly dismisses an appeal for lack of appellate jurisdiction, this Court reverses and remands for the Court of Appeals to address the merits of the appeal in the first instance. *See, e.g.*, *Sharpe*, 351 N.C. at 166. Here, however, the underlying merits present a question of significant importance to our State's jurisprudence. Moreover, a prompt, final resolution of this issue is important so that Chemuti's criminal case can proceed. Accordingly, when we allowed the petition to review the Court of Appeals order, we also allowed the town's petition with respect to the district court's order. We now turn to that order and the merits of the underlying issues in this appeal.

## II.    District court order and interpretation of N.C.G.S. § 132-1.4A

The central dispute in this case concerns the proper interpretation of N.C.G.S. § 132-1.4A, a state law creating confidentiality protections for certain law enforcement agency recordings. To assess the parties' arguments on this issue, we must first examine the meaning and intent of that statute.

"The goal of statutory construction is to carry out the intent of the legislature." *Sturdivant v. N.C. Dep't of Pub. Safety*, 386 N.C. 939, 944 (2024). "When construing a statute, we first examine the plain words of the statute because the text of the statute is the best indicia of legislative intent." *Id.* (cleaned up). "If the plain language of the statute is unambiguous, we apply the statute as written." *Id.* "If the plain language of the statute is ambiguous, however, we then look to other methods of statutory construction such as the broader statutory context, the structure of the statute, and certain canons of statutory construction to ascertain the legislature's intent." *Id.*

With this standard in mind, we begin with the text of N.C.G.S. § 132-1.4A. The statute is titled "Law enforcement agency recordings." N.C.G.S. § 132-1.4A. It first enumerates the types of recordings that are covered by the statute, including body-worn camera and dashboard camera footage. *Id.* § 132-1.4A(a). It then creates confidentiality protections for these recordings, stating that they are "not public records," are "not personnel records," and can only be released as provided in the statute itself. *Id.* § 132-1.4A(b), (c), (g).

For criminal defendants like Chemuti, the statute provides two different procedures for obtaining the release—one if the defendant's "image or voice" appears in the recording, and another if it does not. *Id.* § 132-1.4A(c), (f), (g). In practice, however, the procedure is the same. The defendant must petition "the superior court in any county where any portion of the recording was made" for a copy of the recording

in the form and manner provided in the statute. *Id.* § 132-1.4A(f), (g).

The superior court then has discretion "in determining whether to order the release of all or a portion of the recording." *Id.* The statute lists eight factors for the court to consider:

> (1) Release is necessary to advance a compelling public interest.
>
> (2) The recording contains information that is otherwise confidential or exempt from disclosure or release under State or federal law.
>
> (3) The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding.
>
> (4) Release would reveal information regarding a person that is of a highly sensitive personal nature.
>
> (5) Release may harm the reputation or jeopardize the safety of a person.
>
> (6) Release would create a serious threat to the fair, impartial, and orderly administration of justice.
>
> (7) Confidentiality is necessary to protect either an active or inactive internal or criminal investigation or potential internal or criminal investigation.
>
> (8) There is good cause shown to release all portions of a recording.

*Id.* § 132-1.4A(g).

In evaluating these factors, the statute permits the superior court to review the recording *in camera*, to select particular portions to release, and to "place any conditions or restrictions on the release of the recording that the court, in its

discretion, deems appropriate." *Id.* Finally, the statute emphasizes that the recordings cannot be released without the necessary court order:

> (g) Release of Recordings; General; *Court Order Required.* — Recordings in the custody of a law enforcement agency *shall only be released pursuant to court order.* Any custodial law enforcement agency or any person requesting release of a recording may file an action in the superior court in any county where any portion of the recording was made for an order releasing the recording.

*Id.* (emphases added).

It is this last bit of statutory language—authorizing release "pursuant to court order"—that is the crux of the parties' dispute in this case. The town contends that if Chemuti wants to obtain the recordings from the day of her arrest, "she must follow the procedure set by the General Assembly and seek a superior court order." Chemuti, by contrast, argues that the detailed procedure in N.C.G.S. § 132-1.4A is not the *exclusive* means of obtaining the necessary court order. In essence, Chemuti contends that although the statute now requires a "court order" for the release of these law enforcement recordings, it does not say what type of court order or from which court. Thus, Chemuti argues, the statute's procedure, requiring review in superior court, is merely "supplemental to the traditional methods" of obtaining release. For criminal defendants in district court, she argues, this includes a court order from a district court judge or a "court sanctioned" subpoena.

Chemuti's argument fails for multiple reasons. First, it depends entirely on examining the phrase "pursuant to court order" in isolation. This Court "does not read

segments of a statute in isolation." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188 (2004).

Instead, we reject a "rigid interpretation of isolated provisions" in favor of the reading

compelled "by the whole of the statutory text." *In re A.P.*, 371 N.C. 14, 18 (2018).

Here, Chemuti's argument is undermined by the next sentence of the statute.

After stating that recordings "shall only be released pursuant to court order," the

statute's next sentence explains how to obtain that court order: "Any custodial law

enforcement agency or any person requesting release of a recording may file an action

in the superior court in any county where any portion of the recording was made for

an order releasing the recording." N.C.G.S. § 132-1.4A(g). Thus, when the phrase

"court order" is not examined in isolation but instead in the context of the entire text

of this subsection, the "court order" described by the statute is one issued by the

superior court in the county where the recording was made.

This is further underscored by the statute's repeated references to "the

superior court" throughout the statute, rather than a more general term such as "a

trial court" or "a court." *See id.* § 132-1.4A(b3), (e), (f), (g). The General Assembly quite

plainly crafted this statute anticipating that all judicial decision-making concerning

release would occur before a specific court: "the superior court in any county where

any portion of the recording was made." *Id.* § 132-1.4A(g).

The eight enumerated factors for the superior court to consider further support

this reading. Among those factors, the superior court "shall consider" whether the

"person requesting release is seeking to obtain evidence to determine legal issues in

a *current* or potential court proceeding." *Id.* § 132-1.4A(g)(3) (emphasis added). If, as Chemuti claims, *any* court can issue the necessary order, the General Assembly would not have written this provision to apply to both "current" and "potential" court proceedings. After all, for "current" court proceedings, the court where the proceeding is currently ongoing could simply issue the order itself. This further demonstrates that the General Assembly understood the superior court in the county where the recording was made to be the exclusive source of the applicable court order.

Finally, this reading of the statute is confirmed by a later subsection creating a simpler, more streamlined process to release the recordings to district attorneys for law enforcement purposes:

> (h) Release of Recordings; Law Enforcement Purposes. — Notwithstanding the requirements of subsections (c), (f), and (g) of this section, a custodial law enforcement agency shall disclose or release a recording to a district attorney (i) for review of potential criminal charges, (ii) in order to comply with discovery requirements in a criminal prosecution, (iii) for use in criminal proceedings in district court, or (iv) for any other law enforcement purpose

*Id.* § 132-1.4A(h).

Under this provision, the recordings must be immediately released—without a court order—to the district attorney "for use in criminal proceedings in district court." *Id.* But, importantly, the statute expressly limits this release only to the district attorney's use for a "law enforcement purpose." *Id.* More specifically, this subsection is titled "Release of Recordings; Law Enforcement Purposes." *Id.* It lists three grounds for release to the district attorney in romanettes (i) to (iii) and then authorizes release

"for any *other* law enforcement purposes" in romanette (iv). *Id.* (emphasis added). The title of the subsection and the use of the phrase "any *other* law enforcement purposes" in romanette (iv) demonstrate that this subsection is limited to release for the district attorney's use in a criminal proceeding. *See id.* (emphasis added). It does not authorize release to criminal defendants or to the district attorney in order to comply with a defendant's subpoena.

Of course, had the General Assembly intended for criminal defendants in district court to have a similarly streamlined release process—one that does not require an order from superior court—it could have included a separate subsection for them, just as it did for district attorneys. But the legislature chose not to do so. Instead, criminal defendants in district court—like civil litigants in district court and anyone else not covered by one of the statute's express exceptions—must use the more general procedure in the earlier sections of the statute. *See id.* § 132-1.4A(c), (f), (g).

We acknowledge that this places a burden on criminal defendants in district court that is not placed on district attorneys or on criminal defendants in superior court, who can access the recordings through discovery or directly from the court presiding over their criminal case. But that is an outcome the General Assembly intended when it drafted these protections for recordings now deemed confidential. It is not for us to judge the wisdom of this legislative policy choice; our duty is "to interpret and apply the law as it is written." *State v. Scoggin*, 236 N.C. 19, 23 (1952). We therefore hold that criminal defendants in district court cannot compel the release

of recordings governed by N.C.G.S. § 132-1.4A through a subpoena. The exclusive procedure for obtaining release of those recordings is through "an action in the superior court in any county where any portion of the recording was made." N.C.G.S. § 132-1.4A(g).

### III.    Constitutional right to present a complete defense

Beyond these statutory arguments, Chemuti also argues that this Court must invoke the canon of constitutional avoidance and reject the plain language of N.C.G.S. § 132-1.4A because, if the statute is given its plain meaning, it would infringe on her "constitutional right to compel the production of law enforcement videos for use at her trial." We reject this argument because the plain text of the statute does not burden Chemuti's constitutional rights.

The United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense to criminal charges. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). This right stems from the Due Process Clause in the Fourteenth Amendment and the Compulsory Process and Confrontation Clauses in the Six Amendment. *Id.* As a result, criminal defendants generally have a right to compel the release of evidence that is necessary to their defense. *See United States v. Nixon*, 418 U.S. 683, 711 (1974).

But, importantly, these protections are not "a constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987). States can

create procedures to protect the confidentiality of certain government records, even though the procedures may limit some access by criminal defendants. *Id.* at 59.

In *Ritchie*, for example, the Commonwealth of Pennsylvania denied a defendant access to certain juvenile records concerning child abuse that were protected by confidentiality laws. The Supreme Court held that the defendant had a constitutional right to access any records that were "both favorable to the accused and material to guilt or punishment." *Id.* at 57. But this did not mean the defendant was entitled to "full access to the disputed information, regardless of the State's interest in confidentiality." *Id.* at 59. Instead, the Supreme Court held that the defendant's rights "can be protected fully" by providing the records "only to the trial court for *in camera* review." *Id.* at 60. The trial court could then order production of any records found to be favorable to the defendant and material to the outcome of the case and order the rest of the records to be withheld. *Id.*

Here, as in *Ritchie*, the State has a compelling interest in limiting access to these recordings. In the course of their duties, law enforcement officers are forced to go to places that are not open to public view—people's cars, their workplaces, even their bedrooms. Officers also can be compelled to confront people at their lowest or most vulnerable points—struggling with addiction, mental health problems, or other life crises. And when responding to criminal activity, an officer's first encounter often is not with the perpetrator of the crime, but with its victims and their suffering.

Placing protections on the release of recordings documenting these deeply personal events is solidly within the State's legitimate interests.

Moreover, the procedure to request release of records under N.C.G.S. § 132-1.4A is far more generous than the one approved by the Supreme Court in *Ritchie*. In *Ritchie*, Pennsylvania did not even provide a means for criminal defendants to access the information at all. 480 U.S. at 43–44. Here, by contrast, N.C.G.S. § 132-1.4A creates a procedure to do so. That procedure might be more time-consuming than simply filling out a subpoena, but it is far from so onerous that it deprives criminal defendants of their ability to present a defense.

Indeed, although Chemuti and her supporting amicus fear that N.C.G.S. § 132-1.4A will put superior courts "in the untenable position of having to choose between complying with N.C.G.S. § 132-1.4A or violating a defendant's constitutional rights," that outcome is simply not possible. It is barred by our precedent. In *State v. Tindall*, the defendant brought a similar compulsory process challenge to a statute governing material witness orders. 294 N.C. 689, 698 (1978). That statute provided trial courts with broad discretion to determine whether the material witness order should be issued or not. *Id.* The defendant argued that the statute was unconstitutional because it gave trial courts discretion over a defendant's ability to access crucial witnesses and evidence. *Id.* We rejected that argument, holding that the trial court's discretion "must, however, be exercised in a manner not inconsistent with the Sixth

Amendment's guaranty that a criminal defendant be afforded compulsory process for obtaining witnesses in his favor." *Id.* (cleaned up).

Here, too, there is no risk of tension between the provisions of N.C.G.S. § 132-1.4A and defendant's constitutional rights. Under *Tindall*, if a defendant is constitutionally entitled to the records, then the superior court must enter an order for their release, regardless of whether the statute's criteria permit it. 294 N.C. at 698. In other words, the statute changes only the *procedure* to obtain evidence needed for a complete defense; it does not change the constitutional test to determine what evidence must be released. We therefore hold that the plain reading of N.C.G.S. § 132-1.4A discussed above does not burden criminal defendants' Due Process Clause, Compulsory Process Clause, or Confrontation Clause rights. Accordingly, we vacate the district court's order because that court lacked authority to compel the release of the requested law enforcement recordings.

## Conclusion

We vacate the trial court's order and remand for further proceedings.

VACATED AND REMANDED.

Justice RIGGS dissenting.

The district court correctly denied the motion to quash filed by the Town of Mooresville and the Mooresville Police Department (collectively, Mooresville) and ordered Mooresville to comply with defendant Charlotte Chemuti's subpoena requesting body camera footage. I would hold that N.C.G.S. § 132-1.4A does not establish the exclusive method for criminal defendants in district court to request body camera footage. As such, I would affirm the district court's order.

Ms. Chemuti was arrested on 28 October 2023 and charged with resisting a public officer. Her misdemeanor charge was filed in district court. She filed a subpoena requesting "any bodycam videos showing the incident, arrest, and incarceration of Charlotte Chemuti from all officers involved." The Town of Mooresville responded with a letter objecting to the subpoena for a variety of reasons, including that it violated N.C.G.S. § 132-1.4A(f)–(g), required Mooresville to disclose protected material, was unreasonable and oppressive, and failed to allow reasonable time for compliance.[1] The district court entered an order on 31 January 2024 requiring Mooresville to release the body camera footage to Ms. Chemuti.

Mooresville objected to the subpoena by claiming that it violated N.C.G.S.

---

[1] An attorney for the Town of Mooresville objected to the subpoena in a letter to Ms. Chemuti's attorney. In its Order for Preservation of Any and All Evidence, the district court handwrote that the "Town of Mooresville's letter dated 12/19/23 is not a proper motion to quash." Mooresville later filed a procedurally proper motion to quash.

§ 132-1.4A(f)–(g).  In that statute, the General Assembly established a procedure for requesting the release of body camera footage, inspired in large part by the proliferation of body cameras on law enforcement officers and the public's interest in obtaining such footage.  H.B. 972, 2016 Gen. Assemb., Reg. Sess. (N.C. 2016).  The statute reads, in relevant part:

> (f) Release of Recordings to Certain Persons; Expedited Process. — Notwithstanding the provisions of subsection (g) of this section, a person authorized to receive disclosure pursuant to subsection (c) of this section, or the custodial law enforcement agency, may petition the superior court in any county where any portion of the recording was made for an order releasing the recording to a person authorized to receive disclosure. . . .
>
> . . . .
>
> (g) Release of Recordings; General; Court Order Required. — Recordings in the custody of a law enforcement agency shall only be released pursuant to court order. Any custodial law enforcement agency or any person requesting release of a recording may file an action in the superior court in any county where any portion of the recording was made for an order releasing the recording.

N.C.G.S. § 132-1.4A(f)–(g) (2023).  Mooresville argued Ms. Chemuti's subpoena was improper because it was not a "court order" pursuant to N.C.G.S. § 132-1.4A(f)–(g). Even once Ms. Chemuti received a court order from the district court, Mooresville argued that the order was insufficient to require release under the theory that N.C.G.S. § 132-1.4A requires that the court order come from a superior court.  I disagree with Mooresville and the majority that N.C.G.S. § 132-1.4A establishes that

superior court orders are the exclusive procedure for defendants to request body camera footage. The majority, in requiring a superior court order to release body camera footage, inserts the word "superior" into the language of the statute. The plain language of the statute establishes that a court order is mandatory but does not create an exclusive procedure in the superior court. The majority then relies on other references to "superior court" in the statute to argue that the legislature must have meant "superior court order" when the statute uses "court order." To the extent that these provisions allow superior courts to order the release of body camera footage, the language is permissive, not mandatory. Furthermore, to the extent that the use of "court order" and references to "superior court" create any ambiguity in the statute, I would resolve those ambiguities in favor of more easy access for criminal defendants to materials that may be exonerating or significant to their cases. The majority's interpretation of N.C.G.S. § 132-1.4A risks violating defendants' constitutional rights and impeding judicial efficiency.

In statutory interpretation, "legislative intent is the guiding star." *Fearrington v. City of Greenville*, 386 N.C. 38, 52 (2024) (quoting *Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 161 (1962)). Intent can be determined first by the plain language, "as the 'actual words of the legislature are the clearest manifestation of its intent.'" *Id.* (quoting *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201 (2009)). Because the actual words are so important, "we give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C. Dep't of Corr.*,

363 N.C. at 201 (citing *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188 (2004)). The Court has "no power to add to or subtract from the language of the statute." *Ferguson v. Riddle*, 233 N.C. 54, 57 (1950). Here, the legislature's words are clear: "Recordings in the custody of a law enforcement agency shall only be released pursuant to court order." N.C.G.S. § 132-1.4A(g).

The statute requires a court order, not a superior court order, to release body camera footage. If the General Assembly intended to limit the ability to release body camera footage to only the superior court, then it could have done so by including the word "superior" in its mandate. Instead, by using "court order" instead of "superior court order," the General Assembly implicitly rejected the majority's interpretation. If the "actual words of the legislature are the clearest manifestation of its intent," *see Fearrington*, 386 N.C. at 52 (quoting *N.C. Dep't of Corr.*, 363 N.C. at 201), and we presume "that the legislature carefully chose each word used," it is unnecessary and beyond the scope of the Court's power to add words to identify the legislature's intent, *see N.C. Dep't of Corr.*, 363 N.C. at 201 (citing *Rhyne*, 358 N.C. at 188); *see also Ferguson*, 233 N.C. at 57. Thus, Ms. Chemuti's district court order should have been recognized as valid under N.C.G.S. § 132-1.4A(g). She should not be required to incur the cost of seeking another court order, from a separate court, in order to comply with a statute whose mandate she has already satisfied.

Further, N.C.G.S. § 132-1.4A(f)–(g) establishes superior court orders as a permissive, but not mandatory, source of providing the requisite court order. This

Court has long recognized that, for the purpose of statutory interpretation, the word "shall" indicates a mandatory provision and the word "may" indicates a permissive provision. *See, e.g.*, *State v. Young*, 368 N.C. 188, 206–07 (2015); *In re Hardy*, 294 N.C. 90, 97 (1978) (first citing *Felton v. Felton*, 213 N.C. 194 (1938); and then citing *Rector v. Rector*, 186 N.C. 618 (1923)). A mandatory provision is one that "requires the trial court to act in a very specific manner or renders certain types of evidence inadmissible for any purpose whatsoever," *Young*, 368 N.C. at 207, while a permissive provision is one that does not require the permitted statutory behavior, *In re Hardy*, 294 N.C. at 97 (first citing *Felton*, 213 N.C. 194; and then citing *Rector*, 186 N.C. 618). Here, N.C.G.S. § 132-1.4A(f)–(g) indicates that a person may, but need not, receive a superior court order to release body camera footage.

In describing the procedure for releasing body camera footage, N.C.G.S. § 132-1.4A refers to the superior court using only permissive language. In subsection (f), the statute reads: "[A] person authorized to receive disclosure pursuant to subsection (c) of this section, or the custodial law enforcement agency, *may* petition the superior court in any county where any portion of the recording was made for an order releasing the recording to a person authorized to receive disclosure." N.C.G.S. § 132-1.4A(f) (emphasis added). Then, in subsection (g), the General Assembly demonstrated that it understood the difference between the mandatory "shall" and permissive "may," writing:

> Recordings in the custody of a law enforcement agency *shall* only be released pursuant to court order. Any

-22-

> custodial law enforcement agency or any person requesting
> release of a recording *may* file an action in the superior
> court in any county where any portion of the recording was
> made for an order releasing the recording.

N.C.G.S. § 132-1.4A(g) (emphases added).  The legislature's intent is clear from the plain language of the statute—while defendants must obtain a court order to receive body camera footage, that order need not come from a superior court.  When the General Assembly carefully chooses language that does not require a superior court order, it would be improper for this Court to impose an additional requirement or burden.  Defendants like Ms. Chemuti, whose low-level offense cases are heard in district court and frequently disposed of or resolved with finality by the district court, should be able to receive the mandatory court order from the district court—the court in which their case is proceeding.  To hold otherwise would be to ignore the clear intent of the General Assembly and create an unnecessary hurdle for district court defendants.

In another part of N.C.G.S. § 132-1.4A, the General Assembly demonstrated it "carefully chose each word used" and understood the difference between the mandatory "shall" and permissive "may."  *See N.C. Dep't of Corr.*, 363 N.C. at 201 (citing *Rhyne*, 358 N.C. at 188).  Unlike the release provisions, N.C.G.S. § 132-1.4A's disclosure provision[2] creates a mandatory procedure for law enforcement agencies:

---

[2] "Disclose or disclosure" is defined as making "a recording available for viewing or listening to by the person requesting disclosure, at a time and location chosen by the custodial law enforcement agency. This term does not include the release of a recording." N.C.G.S.

"[A] law enforcement agency *shall* file a petition in the superior court . . . and *shall* also deliver a copy of the petition and a copy of the recording . . . to the senior resident superior court judge for that superior court district or their designee" N.C.G.S. § 132-1.4A(b3) (emphases added). If the General Assembly intended to require people seeking the release of body camera footage to obtain a superior court order, N.C.G.S. § 132-1.4A(b3) proves that it would have used "shall" instead of "may" in subsection (g). The majority incorrectly interprets N.C.G.S. § 132-1.4A to create a mandatory, exclusive procedure in the superior court.

Beyond the statutory interpretation, the majority's holding has significant practical impacts for criminal defendants at the district court level. The United States Constitution, through the Due Process Clause, Compulsory Process Clause, and Confrontation Clause, "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (cleaned up). These constitutional provisions act as a limitation on the legislature's ability to establish rules excluding evidence from criminal trials. *Id.* North Carolina's Constitution similarly secures due process and compulsory process rights to criminal defendants. N.C. Const. art. I, §§ 19, 23; *State v. House*, 295 N.C. 189, 205–06 (1978).

While it is true that criminal defendants in district court do not have a

---

§ 132-1.4A(a)(4) (2023). "Release" is defined, "To provide a copy of a recording." N.C.G.S. § 132-1.4A(a)(7).

statutory right to discovery, *State v. Cornett*, 177 N.C. App. 452, 455 (2006), district court defendants are entitled to receive exculpatory information and retain their constitutional right to compulsory process, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963); *State v. Newell*, 82 N.C. App. 707, 708 (1986); *State v. Love*, 100 N.C. App. 226, 229 (1990) ("Another alternative for the production of documents not subject to the criminal discovery statute is the use of a subpoena *duces tecum*."). Therefore, even if a district court defendant does not have a right to all discovery material, withholding the body camera footage could violate the defendant's compulsory process rights if he or she is constitutionally entitled to the footage. The majority's interpretation of N.C.G.S. § 132-1.4A subjects district court defendants' compulsory process rights to the discretion of superior court judges and makes it significantly more difficult for defendants to obtain discovery to which they are constitutionally entitled.

Instead, the majority should have interpreted N.C.G.S. § 132-1.4A under the doctrine of constitutional avoidance. This Court has repeatedly recognized that "[w]hen reasonably possible, a statute . . . should be construed so as to avoid serious doubt as to its constitutionality." *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 291 N.C. 55, 70 (1976). When issues of constitutional conflict arise, the Court has an obligation to "avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds." *James v. Bartlett*, 359 N.C. 260, 266 (2005) (quoting *Anderson v. Assimos*, 356 N.C. 415, 416 (2002)). The majority's

interpretation of N.C.G.S. § 132-1.4A creates a constitutional conflict between district court defendants' compulsory process rights and their ability to access body camera footage in district court. This constitutional conflict could be avoided by interpreting N.C.G.S. § 132-1.4A(f)–(g) as supplemental to the traditional methods of using a court sanctioned subpoena or filing a motion with the district court, rather than the exclusive method for obtaining a court order for release of the footage.[3]

Additionally, the majority's interpretation of N.C.G.S. § 132-1.4A creates a needlessly complex process contrary to the "worthy goals of economy, efficiency, accuracy and fairness in judicial proceedings." *See State v. White*, 322 N.C. 506, 518 (1988). Requiring a superior court order creates a bifurcated process where to obtain body camera footage, district court criminal defendants must file a separate action in civil superior court. This subjects defendants to different standards, procedures, and judges. The North Carolina Constitution mandates that "right and justice shall be administered without favor, denial, or delay," N.C. Const. art. I, § 18, but requiring defendants to file a civil action and obtain a court order from a separate court inherently creates delay. The result of this unnecessarily complicated process will be slower resolution for cases, more confusion amongst parties and counsel, and docket

---

[3] Because I interpret N.C.G.S. § 132-1.4A to supplement traditional methods of compelling the production of evidence in a criminal proceeding, I would hold that the Town of Mooresville did not have a substantial right in following one certain procedure for release of the footage. *See Hanesbrand Inc. v. Fowler*, 369 N.C. 216, 218–19 (2016) (noting that substantial rights are distinct from interests in "matters of form"). Thus, I do not think the Court of Appeals erred by dismissing the Town's appeal as interlocutory.

congestion.

Finally, I agree wholeheartedly with the majority's point that N.C.G.S. § 132-1.4A changes only the procedure to receive body camera footage, not the constitutional test courts must apply in deciding whether to release the footage—even though I think the majority dilutes its commitment to this point through its statutory analysis. If a defendant is constitutionally entitled to receive body camera footage, the superior court *must* enter an order for its release, regardless of the criteria laid out in N.C.G.S. § 132-1.4A. *See State v. Tindall*, 294 N.C. 689, 698 (1978) (reasoning that, when a judge was given discretion under a statute using permissive "may" language, he was required to exercise the discretion in a manner not inconsistent with a criminal defendant's compulsory and due process rights). To the extent that defendants' constitutional rights and statutory provisions conflict, judges should take care to ensure the constitutional rights prevail.

For the reasons above, I respectfully dissent. I would affirm the district court's order denying Mooresville's motion to quash and ordering Mooresville to comply with Ms. Chemuti's subpoena.

Justice EARLS joins in this dissenting opinion.